CRTR2709-CR



**COMMONWEALTH OF MASSACHUSETTS**
**PLYMOUTH COUNTY**
**Docket Report**

**2083CV00401 Andrews, Gordon Cunningham vs. Town of Halifax et al**

| | | | |
|---|---|---|---|
| **CASE TYPE:** | Actions Involving the State/Municipality | **FILE DATE:** | 05/19/2020 |
| **ACTION CODE:** AD1 | | **CASE TRACK:** | A - Average |
| **DESCRIPTION:** Equity Action involving the  Commonwealth, Municipality, MBTA, etc. | | | |
| **CASE DISPOSITION DATE:** 09/16/2020 | | **CASE STATUS:** | Closed |
| **CASE DISPOSITION:** | Transferred to another Court | **STATUS DATE:** | 09/16/2020 |
| **CASE JUDGE:** | | **CASE SESSION:** | Civil C |

## DCM TRACK

| Tickler Description | Due Date | Completion Date |
|---|---|---|
| Service | 08/17/2020 | 09/16/2020 |
| Answer | 09/16/2020 | 09/16/2020 |
| Rule 12/19/20 Served By | 09/16/2020 | 09/16/2020 |
| Rule 12/19/20 Filed By | 10/16/2020 | 09/16/2020 |
| Rule 12/19/20 Heard By | 11/16/2020 | 09/16/2020 |
| Rule 15 Served By | 07/13/2021 | 09/16/2020 |
| Rule 15 Heard By | 08/12/2021 | 09/16/2020 |
| Rule 15 Filed By | 08/12/2021 | 09/16/2020 |
| Discovery | 05/09/2022 | 09/16/2020 |
| Rule 56 Served By | 06/08/2022 | 09/16/2020 |
| Rule 56 Filed By | 07/08/2022 | 09/16/2020 |
| Final Pre-Trial Conference | 11/07/2022 | 09/16/2020 |
| Judgment | 05/19/2023 | 09/16/2020 |

## PARTIES

| | | |
|---|---|---|
| **Plaintiff**<br>Andrews,  Gordon Cunningham | **Private Counsel**<br>Ginny Sinkel Kremer<br>Blatman, Bobrowski & Haverty, LLC<br>Blatman, Bobrowski & Haverty, LLC<br>9 Damonmill Square Suite 4A4<br>Concord, MA 01742<br>Work Phone (978) 371-2226<br>Added Date: 05/19/2020 | **629147** |
| **Defendant**<br>Daniel Borsari Individually and as a member of Zoning Board of Appeals for the town of Halifax | **Attorney**<br>Gregor Pagnini<br>Brody Hardoon Perkins & Kesten, LLP<br>Brody Hardoon Perkins & Kesten, LLP<br>699 Boylston St 12th Floor<br>Boston, MA 02116<br>Work Phone (617) 880-7100<br>Added Date: 09/15/2020 | **667659** |

CRTR2709-CR



**COMMONWEALTH OF MASSACHUSETTS**
**PLYMOUTH COUNTY**
**Docket Report**

| | | |
|---|---|---|
| **Defendant** <br> Robert Durgin Individually and as a member of Zoning Board of Appeals for the town of Halifax | **Attorney** <br> Gregor Pagnini <br> Brody Hardoon Perkins & Kesten, LLP <br> Brody Hardoon Perkins & Kesten, LLP <br> 699 Boylston St 12th Floor <br> Boston, MA 02116 <br> Work Phone (617) 880-7100 <br> Added Date: 09/15/2020 | 667659 |
| **Defendant** <br> Troy Garron Individually and as a member of The Town of Halifax's Board of Selectman | **Attorney** <br> Gregor Pagnini <br> Brody Hardoon Perkins & Kesten, LLP <br> Brody Hardoon Perkins & Kesten, LLP <br> 699 Boylston St 12th Floor <br> Boston, MA 02116 <br> Work Phone (617) 880-7100 <br> Added Date: 09/15/2020 | 667659 |
| **Defendant** <br> Robert Gaynor Individually and as a member of Zoning Board of Appeals for the town of Halifax | **Attorney** <br> Gregor Pagnini <br> Brody Hardoon Perkins & Kesten, LLP <br> Brody Hardoon Perkins & Kesten, LLP <br> 699 Boylston St 12th Floor <br> Boston, MA 02116 <br> Work Phone (617) 880-7100 <br> Added Date: 09/15/2020 | 667659 |
| **Defendant** <br> Gerald Joy Individually and as a member of Zoning Board of Appeals for the town of Halifax | **Attorney** <br> Gregor Pagnini <br> Brody Hardoon Perkins & Kesten, LLP <br> Brody Hardoon Perkins & Kesten, LLP <br> 699 Boylston St 12th Floor <br> Boston, MA 02116 <br> Work Phone (617) 880-7100 <br> Added Date: 09/15/2020 | 667659 |
| **Defendant** <br> Thomas Millias Individually and as a member of The Town of Halifax's Board of Selectman <br> 357 South Street <br> Halifax, MA 02338 | **Attorney** <br> Gregor Pagnini <br> Brody Hardoon Perkins & Kesten, LLP <br> Brody Hardoon Perkins & Kesten, LLP <br> 699 Boylston St 12th Floor <br> Boston, MA 02116 <br> Work Phone (617) 880-7100 <br> Added Date: 09/15/2020 | 667659 |
| **Defendant** <br> Kozhaya Nessralla Individually and as a member of Zoning Board of Appeals for the town of Halifax <br> 69 Summit Street <br> Halifax, MA 02338 | **Attorney** <br> Gregor Pagnini <br> Brody Hardoon Perkins & Kesten, LLP <br> Brody Hardoon Perkins & Kesten, LLP <br> 699 Boylston St 12th Floor <br> Boston, MA 02116 <br> Work Phone (617) 880-7100 <br> Added Date: 09/15/2020 | 667659 |

CRTR2709-CR



**COMMONWEALTH OF MASSACHUSETTS**
**PLYMOUTH COUNTY**
**Docket Report**

| | | |
|---|---|---|
| **Defendant**<br>Peter Parcellin Individually and as a member of Zoning Board of Appeals for the town of Halifax | **Attorney**<br>Gregor Pagnini<br>Brody Hardoon Perkins & Kesten, LLP<br>Brody Hardoon Perkins & Kesten, LLP<br>699 Boylston St 12th Floor<br>Boston, MA 02116<br>Work Phone (617) 880-7100<br>Added Date: 09/15/2020 | **667659** |
| **Defendant**<br>Robert Piccirlli Individually and as a member of Halifax Planning Board and as Halifax Building Commissioner<br>20 Paradise Lane<br>Halifax, MA 02338 | **Attorney**<br>Gregor Pagnini<br>Brody Hardoon Perkins & Kesten, LLP<br>Brody Hardoon Perkins & Kesten, LLP<br>699 Boylston St 12th Floor<br>Boston, MA 02116<br>Work Phone (617) 880-7100<br>Added Date: 09/15/2020 | **667659** |
| **Defendant**<br>Charles Seelig Individually and in his/her Capacity As Town Administrator of the Town of Halifax | **Attorney**<br>Gregor Pagnini<br>Brody Hardoon Perkins & Kesten, LLP<br>Brody Hardoon Perkins & Kesten, LLP<br>699 Boylston St 12th Floor<br>Boston, MA 02116<br>Work Phone (617) 880-7100<br>Added Date: 09/15/2020 | **667659** |
| **Defendant**<br>Town of Halifax<br>499 Plymouth Street<br>Halifax, MA 02338 | **Attorney**<br>Gregor Pagnini<br>Brody Hardoon Perkins & Kesten, LLP<br>Brody Hardoon Perkins & Kesten, LLP<br>699 Boylston St 12th Floor<br>Boston, MA 02116<br>Work Phone (617) 880-7100<br>Added Date: 09/15/2020 | **667659** |

### FINANCIAL DETAILS

| Date | Fees/Fines/Costs/Charge | Assessed | Paid | Dismissed | Balance |
|---|---|---|---|---|---|
| 05/19/2020 | Civil Filing Fee (per Plaintiff) Receipt: 16192 Date: 05/19/2020 | 240.00 | 240.00 | 0.00 | 0.00 |
| 05/19/2020 | Civil Security Fee (G.L. c. 262, § 4A) Receipt: 16192 Date: 05/19/2020 | 20.00 | 20.00 | 0.00 | 0.00 |
| 05/19/2020 | Civil Surcharge (G.L. c. 262, § 4C) Receipt: 16192 Date: 05/19/2020 | 15.00 | 15.00 | 0.00 | 0.00 |
| | **Total** | **275.00** | **275.00** | **0.00** | **0.00** |

CRTR2709-CR



**COMMONWEALTH OF MASSACHUSETTS**
**PLYMOUTH COUNTY**
**Docket Report**

| | | INFORMATIONAL DOCKET ENTRIES | |
|---|---|---|---|
| **Date** | **Ref** | **Description** | **Judge** |
| 05/19/2020 | | Attorney appearance<br>On this date Ginny Sinkel Kremer, Esq. added as Private Counsel for Plainti<br>Gordon Cunningham Andrews | |
| 05/19/2020 | | Case assigned to:<br>DCM Track A - Average was added on 05/19/2020 | |
| 05/19/2020 | 1 | Original civil complaint filed. | |
| 05/19/2020 | 2 | Civil action cover sheet filed. | |
| 08/13/2020 | 3 | Amended: amended complaint filed by Gordon Cunningham Andrews | |
| 08/14/2020 | 4 | Service Returned for<br>Defendant Robert Piccirlli Individually and as a member of Halifax Planning<br>Board and as Halifax Building Commissioner: Service made at last and usua | |
| 08/14/2020 | 5 | Service Returned for<br>Defendant Thomas Millias Individually and as a member of The Town of<br>Halifax's Board of Selectman: Service made at last and usual; | |
| 08/14/2020 | 7 | Service Returned for<br>Defendant Town of Halifax Zoning Board of Appeals: Service through person<br>charge / agent; | |
| 08/14/2020 | 6 | Service Returned for<br>Defendant Kozhaya Nessralla Individually and as a member of Zoning Board<br>of Appeals for the town of Halifax: Service made at last and usual; | |
| 08/14/2020 | 8 | Service Returned for<br>Defendant Town of Halifax Board of Selectmen: Service through person in<br>charge / agent; | |
| 08/14/2020 | 9 | Service Returned for<br>Defendant Town of Halifax: Service through person in charge / agent; | |
| 09/10/2020 | 10 | Service Returned for<br>Defendant Charles Seelig Individually and in his/her Capacity As Town<br>Administrator of the Town of Halifax: Service made in hand; | |
| 09/15/2020 | | Attorney appearance<br>On this date Gregor Pagnini, Esq. added for all Defendants. | |
| 09/15/2020 | 11 | Case transferred to another court. | |

A TRUE COPY ATTEST



Clerk of Courts

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.: 1:20-cv-11659

GORDON C. ANDREWS,
      Plaintiff,

v.

THE TOWN OF HALIFAX through its Board of
Selectmen, Zoning Board of Appeals and
Planning Board; and THOMAS MILLIAS,
ROBERT PICCIRILLI, KOZHAYA
NESSRALLA, and CHARLES SEELIG, in their
Individual and Official Capacities as Officials of
the Town of Halifax,
      Defendants.



Certified to be a true and
correct copy of the original
Robert M. Farrell, Clerk
U. S. District Court
District of Massachusetts
By: _____
    Deputy Clerk

Date: 09/11/2020

COMMONWEALTH OF MASSACHUSETTS
SUPERIOR COURT DEPT. OF THE TRIAL COURT
PLYMOUTH COUNTY

SEP 1 5 2020

Clerk of Court

## DEFENDANTS' NOTICE OF REMOVAL OF ACTION FROM STATE COURT

    Pursuant to 28 U.S.C. §1441(c) and 1446, the Defendants petition for removal of this

action to the United States District Court for the District of Massachusetts. As grounds therefore,

the Defendants state as follows:

1.     On or about May 19, 2020, the Plaintiff filed this suit in the Plymouth Superior Court,

Civil Action No.: 2083CV00401.

2.     On August 14, 2020, the Plaintiff's complaint was served upon the Defendants. Attached

as Exhibit A is a copy of the Plaintiff's complaint.

3.     This Court has original jurisdiction of this action because the Plaintiff brings claims

under 42 U.S.C. § 1983 alleging violation of civil rights.

4.     Because this matter is an action arising under federal law of which this Court has original

jurisdiction, as authorized by 28 U.S.C. §1331, it is subject to removal under 28 U.S.C. §1441(c).

5.     This Notice of Removal is being filed within the time period required by law, 28 U.S.C.

§1446(b).

Respectfully submitted,

Defendants,
By their attorneys,

/s/ Gregor A. Pagnini
Gregor A. Pagnini, BBO# 667659
Leonard H. Kesten, BBO#542042
BRODY, HARDOON, PERKINS & KESTEN, LLP
699 Boylston Street
Boston, MA 02116
(617) 880-7100
gpagnini@bhpklaw.com
lkesten@bhpklaw.com

DATED: September 8, 2020

## CERTIFICATE OF SERVICE

I hereby certify that this document was filed through the ECF system and will therefore

be sent electronically to the registered participants as identified on the Notice of Electric Filing

(NEF) and paper copies will be sent to those participants indicated as non-registered participants.

/s/ Gregor A. Pagnini
Gregor A. Pagnini BBO# 667659

DATED: September 8, 2020

A TRUE COPY ATTEST
Clerk of Courts

9/15/20

COMMONWEALTH OF MASSACHUSETTS

PLYMOUTH, ss.

SUPERIOR COURT DEPARTMENT
C.A. NO.: 2083CV00401

GORDON C. ANDREWS,
        Plaintiff,

v.

THE TOWN OF HALIFAX through its Board of
Selectmen, Zoning Board of Appeals and
Planning Board; and THOMAS MILLIAS,
ROBERT PICCIRILLI, KOZHAYA
NESSRALLA, and CHARLES SEELIG, in their
Individual and Official Capacities as Officials of
the Town of Halifax,
        Defendants.

FILED
COMMONWEALTH OF MASSACHUSETTS
SUPERIOR COURT DEPT. OF THE TRIAL COURT
PLYMOUTH COUNTY

SEP 1 5 2020

Clerk

## WRITTEN NOTICE OF REMOVAL TO
## FEDERAL COURT PURSUANT TO 28 U.S.C. §1446(d)

A Notice of Removal of the above-captioned action from the Superior Court of the

Commonwealth of Massachusetts, Plymouth County, to the United States District Court for

the District of Massachusetts (a copy of which Notice is filed herewith) was duly filed on

September 8, 2020, in the United States District Court for the District of Massachusetts. A

copy of the Notice of Removal, certified by the United States District Court for the District

of Massachusetts, having been duly filed with the Clerk for the Superior Court of the

Commonwealth of Massachusetts, Plymouth County, in accordance with 28 U.S.C. §1446(d),

the Superior Court shall proceed no further herein unless and until the case is remanded.

[signature on following page]

Respectfully submitted,

The Defendants
By their attorneys,

_Gregor A. Pagnini_

Gregor A. Pagnini, BBO #667659
Leonard H. Kesten, BBO # 542042
BRODY, HARDOON, PERKINS & KESTEN, LLP
699 Boylston Street, 12th Floor
Boston, MA 02116
(617) 880-7100
gpagnini@bhpklaw.com
lkesten@bhpklaw.com

DATED: September 14, 2020

## CERTIFICATE OF SERVICE

I hereby certify that on this day, September 14, 2020 a true copy of the above document was served upon the attorney of record for each party by email.

_Gregor A. Pagnini_

Gregor A. Pagnini, BBO #667659

A TRUE COPY ATTEST
Clerk of Courts

## COMMONWEALTH OF MASSACHUSETTS

PLYMOUTH, ss.

SUPERIOR COURT
NO. 2083CV00401

GORDON C. ANDREWS,

                      **Plaintiff,**

v.

**THE TOWN OF HALIFAX and its ITS
BUILDING INSPECTOR, ROBERT
PICCIRILLI, and MEMBERS OF THE
HALIFAX ZONING BOARD OF APPEALS,
ROBERT GAYNOR, KOZHAYA
NESSRALLA, ROBERT DURGIN, GERALD
JOY, DANIEL BOSARI, PETER PARCELLIN,
and MEMBERS OF ITS BOARD OF
SELECTMEN, TROY GARRON AND
THOMAS MILLIAS, and TOWN
ADMINISTRATOR CHARLES SEELIG, all
named both Individually and in their Capacities
as current or former Officials of the Town of
Halifax,**

                      **Defendants.**

FILED
COMMONWEALTH OF MASSACHUSETTS
SUPERIOR COURT DEPT. OF THE TRIAL COURT
PLYMOUTH COUNTY

MAY 19 2020

Clerk of Court

## COMPLAINT AND JURY DEMAND

### THE PARTIES

1. The Plaintiff, Gordon Cunningham Andrews, (Mr. Andrews), is an adult resident of the
   Town of Halifax, Plymouth County, Massachusetts, with a home address of 244 Elm
   Street.

2. The Defendant, Troy Garron, (Mr. Garron), is an adult resident of the Town of Halifax,
   Plymouth County, Massachusetts.

3. The Defendant, Thomas Millias, (Mr. Tom Millias), is an adult resident of the Town of
   Halifax, Plymouth County, Massachusetts.

4.  The Defendants, Troy Garron and Thomas Millias have at all relevant times been elected members of the Town of Halifax's Board of Selectmen ("the Board") with an address of Halifax Town Hall, 499 Plymouth Street, Halifax MA 02338

5.  The Defendant, Charles Seelig, has at all relevant times been the Town Administrator of the town of Halifax, with an address of Halifax Town Hall, 499 Plymouth Street, Halifax, MA 02338

6.  Defendant Town of Halifax, ("the Town"), is a municipal corporation organized under the laws of the Commonwealth with its principal official located at 499 Plymouth Street, Halifax MA 02338.

7.  The Defendant, Robert Piccirilli, (Mr. Piccirilli) is an adult resident of the Town of Halifax, Plymouth County, Massachusetts.

8.  Mr. Piccirilli was formerly a member of the Halifax Planning Board and was later appointed as the Halifax Building Commissioner, with an address of Halifax Town Hall, 499 Plymouth Street Halifax, MA 02338

9.  The Defendant, Robert Gaynor, (Mr. Gaynor) is an adult resident of the Town of Halifax, Plymouth County, Massachusetts.

10. The Defendant, Kozhaya Nessralla, (Mr. Nessralla) is an adult resident of the Town of Halifax, Plymouth County, Massachusetts.

11. The Defendant, Robert Durgin, (Mr. Durgin) is an adult resident of the Town of Halifax, Plymouth County, Massachusetts.

12. The Defendant, Gerald Joy, (Mr. Joy) is an adult resident of the Town of Halifax, Plymouth County, Massachusetts.

13. The Defendant, Daniel Borsari, (Mr. Borsari) is an adult resident of the Town of Halifax, Plymouth County, Massachusetts.

14. The Defendant, Peter Parcellin, (Mr. Parcellin) is an adult resident of the Town of Halifax, Plymouth County, Massachusetts.

15. The Defendants, Robert Gaynor, Kozhaya Nessralla, Robert Durgin, Gerald Joy, Peter Parcellin, Daniel Borsari have at all relevant times been appointed by the Board of Selectmen as members of the Zoning Board of Appeals ("The ZBA") with an address of Halifax Town Hall, 499 Plymouth Street, Halifax MA 02338.

## JURISDICTION AND VENUE

16. Venue is appropriate in this Court under G.L. c. 223, §§1 and 8(3,) as activities in question are within this judicial district and the conduct giving rise to this action took place within this judicial district.

17. Jurisdiction is appropriate in this Court under G.L. c. 212 §4.

## FACTUAL ALLEGATIONS

18. On February 21, 2003, Mr. Andrews purchased the land and house thereon at 244 Elm Street, Halifax, where he resides with his wife and young daughter.

19. Mr. Andrews was aware at the time of purchase that there had been previous attempts to develop the land abutting 244 Elm Street ("the Abutting Land") known as Halifax Assessor's map 15 lot 13, Map 15 lot 5, and Map 14 lot 9.

20. At the time of purchase of 244 Elm Street, the Abutting Land was owned by the Bosworth family

21. The Abutting Land comprises approximately 12 acres of predominately back land with only a small strip connecting it Elm Street, which is its only point of access.

22. Each time the Bosworth family or a prospective buyer inquired about developing the Abutting Land, the Town, through the Planning Board or other official, responded that the Halifax Zoning By Law ("ZBL") requires 110 ft. of frontage on an existing way for any new subdivision, and the Abutting Land had only 74.75 feet of frontage on Elm Street.

23. Thus, it was the Town's position that the Abutting Land could only be developed as a single-family home under the Estate Lot provisions of the ZBL, § 167-16.

24. On January 14, 2005, Mr. Corrie S. Merritt, trustee of the Party Trust, purchased the Abutting Land from the Bosworth family for $250,000.

25. Mr. Merritt represented to the Bosworths that he was going to construct on the Abutting Land only a single-family home for himself and would not attempt any larger development.

26. In 2006, however, the Party Trust proposed construction of a multifamily development on the Abutting Land pursuant to G.L. c. 40B of a forty-eight (48) housing units.

27. On October 10, 2006 the Halifax Board of Selectmen ("the Board") held a public hearing on the Party Trust's 40B proposal.

3

28. The Party Trust ultimately withdrew its 40B proposal.

29. At that time, Mr. Thomas Millias was the appointed Building Inspector, a position he had held since 1997.

30. A that time Mr. Piccirilli was the Assistant Building Inspector, a position he held since 1999.

31. On March 3, 2010, Mr. Piccirilli and Mr. Thomas Millias formed Paradise Properties LLC, with the stated purpose to "Purchase and Sell Real Estate, land development, building construction, building renovations, and all other activities that businesses do for profit."

32. On June 10, 2010 Paradise Properties LLC purchased from Mary Seaver of 45 Oak Street, Brockton, Massachusetts land shown on Assessors Map 10 Lots 965, 966, 967 on land known as North Pine Street or Pine Street North.

33. This transaction was recorded at the Plymouth County Registry of Deeds in Book 38593 PG 201, Recording Date as June 4, 2010 at 9:38 AM.

34. On September 30, 2010, Mr. Thomas Millias purchased 56 Lingan Street, Halifax, Massachusetts from JPMorgan Chase Bank for Seventy-Five thousand ($75,000) dollars.

35. This transaction is recorded at the Plymouth County Registry of Deeds in Book 39056 PG19, Recording Date as September 30, 2010 at 3:12PM.

36. On September 30, 2010, Mr. Piccirilli as Trustee of 88 Harrison Street Realty Trust, purchased 56 Lingan Street, Halifax, Massachusetts. from Mr. Thomas Millias for Seventy-Five thousand ($75,000) dollars.

37. This transaction is recorded at the Plymouth County Registry of Deeds in Book 39056 PG91, Recording Date as September 30, 2010 at 3:20PM.

38. On October 1, 2013, Mr. Piccirilli as Trustee of 88 Harrison Realty Trust sold 56 Lingan Street for One Hundred ($100) Dollars to Paradise Properties, LLC.

39. This transaction is recorded at the Plymouth County Registry of Deeds in Book 39061 PG61, Recording Date as October, 1, 2010 at 12:10 PM.

40. On or about October 28, 2010, the Party Trust submitted plans to the Planning Board for a conventional subdivision on the Abutting Land.

41. The Party Trust later withdrew that proposal.

4

42. On May 20, 2011, Mr. Piccirilli applied for a building permit for 56 Lingan Street, Halifax, Massachusetts for renovations he represented would cost of thirty thousand ($30,000) dollars.

43. Mr. Thomas Millias, as Building Commissioner, approved and signed the building permit application, and assigned the permit # 11-103, dated May 20, 2011.

44. On December 5, 2011, Mr. Thomas Millias, as Building Commissioner, issued a Certificate of Completion for Permit #11-103, 56 Lingan Street, to Mr. Piccirilli, of Paradise Properties LLC.

45. On December 30, 2011, 56 Lingan Street was sold to Marilyn A. Kelly of 437 High Street, Ellsworth, Main for Two Hundred Twenty Thousand ($220,000) dollars.

46. This transaction is recorded at the Plymouth County Registry of Deeds in Book 40807 PG55, Recording Date as December 30, 2011 at 3:21 PM

47. On March 9, 2012, Mr. Piccirilli created a trust, "340 Monponsett Realty Trust."

48. On April 27, 2012, the 340 Monponsett Realty Trust was recorded at the Plymouth County Registry of Deeds in Book 41286 PG323, Recording Date as April, 27, 2012 at 9:44 AM

49. On May 2, 2012, Mr. Piccirilli as Trustee of 340 Monponsett Realty Trust purchased 340 Monponsett Street From Halifax Farms Realty, LLC, for One Hundred Forty Thousand ($140,000.00) Dollars.

50. This transaction is recorded at the Plymouth County Registry of Deeds in Book 41312 Page 158, Recording Date as May 2, 2012 at 8:57AM.

51. In 2012, the Party Trust again submitted plans to the Halifax Planning Board proposing a conventional subdivision on the Abutting Land, named "Amanda Estates."

52. On September 24, 2012, the Planning Board voted to allow The Party Trust to withdraw its proposed subdivision plan without prejudice.

53. On May 21, 2013, Mr. Seelig as Town Administrator wrote a memo concerning 340 Monponsett Street, on which was located two residential buildings, in which he discussed the ZBL's requirements for Multifamily Developments.

54. Specifically, Mr. Seelig stated that under ZBL §167-7(D)(2) and §167-12, each building in a multifamily development had to be located on a separate lot.

55. Mr. Seelig's memo also noted that it was unlikely that 340 Monponsett St., which is comprised of a single lot, could meet the ZBL's requirements for subdivision into two lots.

56. On June 10, 2013, the ZBA heard Petition #790, a petition to allow a Multifamily Development filed by Mr. Piccirilli for 340 Monponsett Street.

57. The ZBA informed Mr. Piccirilli that his Multifamily Development did not comply with the ZBL.

58. At that meeting, Mr. Piccirilli requested permission to discuss his petition with Halifax Town Land-use Counsel, Attorney Richard Hucksam ("Town Counsel").

59. On June 24, 2013, Town Counsel emailed the ZBA, stating: "Section 167-7.D.(2) of the Bylaw states that multifamily development may be permitted in the B zoning district by grant of a special permit by the Board and that each building in a multifamily development must be on an individual lot with continuous frontage on a public or private way. If the applicant applies for such a special permit in the future, in our opinion that applicant must satisfy the requirement that each building in a multifamily development be on an individual lot, along with other applicable requirements."

60. On July 29, 2013, the ZBA again heard Petition #790.

61. At that meeting, ZBA Chair Debra Tinkham read aloud Mr. Hucksam's June 24, 2013 email.

62. Mr. Piccirilli stated that 340 Monponsett St. could not meet the ZBL's requirements for multi-family developments because it is not (10) acres, does not have individual lots for each building, and does not have the required frontage.

63. On August 15, 2013, Mr. Thomas Millias, as Building Commissioner and Zoning Enforcement Officer, wrote a letter to Mr. Piccirilli's attorney Mr. Joseph Dougherty, Esq.

64. Neither Mr. Thomas Millias or Mr. Piccirilli filed any conflict of interest disclosures concerning their co-ownership of Paradise Properties LLC or 340 Monponsett Street Realty Trust.

65. On October, 7, 2013, Halifax Zoning Board of Appeals ("ZBA") again heard Petition #790, and at that meeting Attorney Joseph Dougherty withdrew the Petition on behalf of 340 Monponsett Realty Trust.

66. On October 8, 2013, the ZBA issued a cease and desist order for all work at 340
    Monponsett Street to the Board of Selectmen, Planning Board, and Building
    Inspector/Zoning Enforcement Officer.

67. At the Board's meeting on October 22, 2013, Mr. Millias recused himself from
    participating in the matter, and requested that the Board appoint Carver's Building
    Inspector, Mr. Frank DeFelice.

68. At that meeting, Mr. Seelig stated that that Mr. Millias had an "appearance" of conflict
    but no actual conflict of interest.

69. At its meeting on November 4, 2013, the ZBA was informed by its secretary that Mr.
    Millias had recused himself.

70. At that meeting, Chair Tinkham stated that Mr. Piccirilli had visited her home to find
    out if he was "all set" with respect to 340 Monponsett St.

71. The ZBA requested that the Board put 340 Monponsett St. on its agenda for its meeting
    on November 12, 2013.

72. On November, 12, 2013, the Chair Tinkman explained to the Board the requirements of
    the ZBL with respect to Multi-family Developments: the original parcel is required to
    be a minimum of 10 acres, and each building had to be located on an individual lot
    which had to be subdivided according to the Town's subdivision requirements.
    subdividing lots.

73. Mr. Piccirilli later filed Petition #802 with the ZBA for 340 Monponsett Street.

74. On January 13, 2014, the ZBA noted that Petition #802 was incomplete and requested
    review by Town Counsel.

75. On February 12, 2014, Attorney Richard Serkey presented Petition #802 to the ZBA.

76. The ZBA caused six questions concerning Petition #802 to be sent to Town Counsel.

77. On March 7, 2014, Town Counsel responded by email, stating the applicant either had
    to comply with ZBL § 167-7(D)(2), which requires that each building be on a separate
    lot that meets the minimum lot requirements, or demonstrate that his multi-family use
    was protected because as a pre-existing non-conforming use.

78. Town Counsel also opined: "We note that the application is for a special permit to
    establish and extend a pre-existing nonconforming use. However, in our opinion the

Bylaw does not provide for establishment or extension of a pre-existing nonconforming use by grant of a special permit."

79. At its March 10, 2014, meeting, Chair Tinkham read Town Counsel's email.

80. Attorney Serkey stated he would file a new application for a special permit and request variances from the ZBL's requirements for Multifamily Developments.

81. On behalf of Mr. Picirilli, Mr. Serkey later filed Petition #808 for 340 Monponsett Realty Trust, which the ZBA heard on May 19, 2014.

82. The ZBA noted that the applicant failed to demonstrate hardship for the variances requested under Petition #808 and allowed the petition to be withdrawn without prejudice.

83. The ZBA however approved Petition #802, issuing a special permit without any findings that the applicant had established that 340 Monponsett Street was a pre-existing non-conforming Multifamily Development.

84. At that same time, two other developers were seeking to construct Multi Family Developments in Halifax.

85. Specifically, via ZBA Petition #811, applicant Halifax Trails sought a special permit for a multifamily development under Halifax Zoning Bylaws §167-7(D)(2) and §167-12, and sought variances from the ZBL's dimensional requirements.

86. Separately, on May 8, 2014, the Party Trust filed an application for site plan review with the Planning Board for Amanda's Estates.

87. The Site Plan submitted by the Party Trust was for a Multifamily Development on the Abutting Land that depicted all buildings on a single lot.

88. At a Planning Board meeting, applicant Halifax Trails recognized that the ZBL required that each building in a Multifamily Development be located on an individual lot and thus it would need to seek frontage variances for at least some of the lots.

89. On June 19, 2014, both Halifax Trails and Amanda's Estates were before the Planning Board for site plan review; ZBA Chair Tinkam and ZBA member Robert Gaynor attended that Planning Board meeting.

90. On July 14, 2014, the Town Administrator contacted Town Counsel concerning both Amanda Estates and Halifax Trails site plan applications.

8

91. On July 14, 2014, the ZBA approved Petition #811m, granting a special permit to Halifax Trails for a multifamily development with each building on a separate lot, and also granted frontage variances.

92. On July 16, 2014, Town Counsel opined in an email to the Town Administrator that the ZBL required that each building in any proposed Multi Family Development be on an individual, subdivided lot, or the Planning Board could not approve the site plan application.

93. On July 17, 2014, the Planning Board informed the Party Trust that each building in its proposed Multifamily Development had to be located on an individual lot; the Party Trust's engineer stated that he was "embarrassed" by missing that requirement clearly stated in §167-7(D)(2)(a).

94. At that same meeting, the Planning Board continues its review of the site plan application Halifax Trails, noting that it complied with ZBL §167-7(D)(2)(a) after receiving the necessary variances from the ZBA.

95. On September 18, 2014, the Planning Board reviewed the Party Trusts revised site plan which depicted each building on a separate lot.

96. At that meeting, the Party Trust's engineer acknowledged that variances for frontage would be required from the ZBA because not all of the proposed lots had adequate frontage on the proposed way.

97. With that acknowledgment, the Planning Board voted to approve the revised site plan for Amanda Estates.

98. On September 22, 2014, Mr. Piccirilli, then Vice Chairman of the Planning Board signed a letter to Amanda Monti, trustee of the Party Trust, stating: "Special Permits for Multifamily Development are allowed by Special Permit from the Zoning Board of Appeals in the AR, B, and C Districts. Variances to any requirements are sought through the Zoning Board of Appeals along with a Special permit for Multi-family developments as set out in the Zoning Chapter 167-7(D)(2). Please be advised that all variances and special permits shall comply with all the rules and regulations and codes of the Town of Halifax."

99. On December 8, 2014, the ZBA opened its public hearing on Petition #823, an application for a Special Permit for a Multifamily Development submitted by the Party Trust for the proposed Amanda's Estates.

100. At that meeting ZBA member Kozhaya Nessralla failed to disclose that his residence at 69 Summit Street abutted land owned by applicants Amanda Monti and Edward Johnson, trustees of the Party Trust.

101. The ZBA approved Petition #823, which depicted all buildings on individual lots.

102. The Plans the ZBA approved were the same plans the Planning Board approved, but with minor changes shown on page 2.

103. On January 15, 2015, the Planning Board was advised by its secretary that the plans the ZBA approved were not identical to those submitted to the Planning Board for site plan review.

104. On or about March 5, 2015, the Planning Board sent a letter to the Party Trust, the Building Inspector, and the ZBA noting that the revised plans had not been approved by the Planning Board.

105. The Party Trust caused the revised plans to be submitted to the Planning Board, which it voted to approve on April 16, 2015.

106. On May 16, 2015, Mr. Thomas Millias was elected to serve on the Board of Selectmen

107. On May 25, 2015, Selectmen Thomas Millias moved that the Board interview Mr. White and Mr. Piccirilli for the position of Building Inspector.

108. At its June 9, 2015, meeting, Mr. Millias recused himself from the interview process.

109. On June 23, 2015, the Selectmen appointed Mr. Piccirilli as the Building Inspector for a term to expire on June 30, 2018.

110. On February 2, 2016, Building Inspector Piccirilli meets with Mr. Robert Pellegrini, the attorney for Halifax Trails developer, along with ZBA Secretary Marion Wong-Ryan and Building Department Secretary Theresa Renaud.

111. At that meeting, Mr. Pellegrini explained that his client wanted to make changes to the foot print of the approved Multifamily Development, Halifax Trails.

112. Mr. Piccirilli requested that the applicants re-apply for a new special permit.

113. Mr. Pellegrini noted that in order to create the individual lots required by §167-7(D)(2), the applicant had to follow the procedures set forth in the subdivision control law.

114. On February 22, 2016, Halifax Trails files a revised application for variances and a new special permit with the ZBA, Petition #842.

115. The application stated that the lots required by §167-7(D)(2) were not "subdivision control lots," a new "interpretation" arrived at my Mr. Piccirilli.

116. On March 1, 2016, Mr. Piccirilli requested a meeting with Halifax Trails attorney Pellegrini.

117. At a meeting on March 2, 2016, Mr. Piccirilli requested that attorney Pellegrini submit a new site plan with the lot lines removed and request that the Planning Board "waive" the requirements of ZBL §167-7(D)(2)(a).

118. As a result, Halifax Trailed filed a new Petition #842, which the Planning Board reviewed on March 3, 2016.

119. At that meeting, the Planning Board voted to issue the requested "waiver," and approved the new site plan.

120. On March 21, 2016, Paradise Properties LLC, filed its Limited Liability Company Annual Report.

121. Mr. Thomas Millias, 357 South Street, Halifax MA 02338, was added as a Manager of Paradise Properties LLC.

122. On April 11, 2016, ZBA opened a public hearing for Petition #843, R&J LLC & Halifax Country Club ("Country Club Estates"), another proposal for a Multifamily Development.

123. ZBA member Kozhaya Nessralla recused himself leaving the ZBA with four members.

124. The Country Club Estates applicant requested a number of variances and proposed to have all buildings on one lot which did not have 150 ft of frontage on a way (Plymouth Street) as required under §167-11.

125. On August 8, 2016, the ZBA was scheduled to open a public meeting for Petition #850 regarding Amanda's Estates.

126. On August 18, 2016, the Planning Board reviewed the Country Club Estates site plan application, Petition #847, and notes that a variance may be required from the ZBA because all of the proposed buildings were located on a single lot. on one lot as opposed to individual lots.

127. On August 22, 2016, the ZBA held the continued public hearing on Petition #847 at which Mr. Kozhaya Nessralla recuses himself

128. Attorney Brennan states that the Planning Board advised that each building must be on an individual lot; the ZBA continued the hearing.

129. Also on August 22, the ZBA heard Amanda's Estates Petition #850, an application for a special permit for a multifamily development under Halifax Zoning Bylaw ("ZBL") §167-7(D)(2) which sought a "waiver" of §167-7(D)(2)(a).

130. Mr. Anrews attended the meeting and read a letter informing the ZBA that construction on Amanda's Estates was damaging Mr. Andrews' home.

131. Mr. Andrews also requested that Town Counsel review Petition #850, opining that ZBL §167-21 did not give them the ZBA any authority to waive, vary or relax any requirement in connection with granting a special permit.

132. The Party Trust thereafter submitted a letter dated August 25, 2016, withdrawing Petition #850, which the ZBA accepted.

133. On October 17, 2016, the ZBA continued public hearing on Petition #847, for Country Club Estates and discussed the requirement that each building to be on a separate lot, ZBL §167-7(D)(2)(a).

134. Chairman Gaynor requested review by Town Counsel.

135. On November, 14, 2016, the ZBA continued review of Petition #847, an attorney Brennan advises that the proposed Multifamily Development cannot be designed as a subdivision; the ZBA voted for a requested extension.

136. On November 16, 2016, Edward Johnson filed application for building permits for two (2) of the proposed six duplexes at Amanda Estates.

137. One application listed the Address as 264 Elm Street Unit #7 Unit #8, with a Property Dimension of 44,812 lot area and 100+ feet of frontage on Assessors Map 15 &14 Parcel Number 6 & 13 & 9. Front Yard setback of 78+ft, Side Yard Setback of 55+ft and Rear Yard Setback of 90+ ft

138. The other application listed the address as 264 Elm Street Unit #1 Unit #2, with a Property Dimension of 44,406 lot area and 140+- feet of frontage on Assessors Map 15 &14 Parcel Number 6 & 13 & 9. Front Yard setback of 76+ft, Side Yard Setback of 55+ft and Rear Yard Setback of 90+ ft

139. On December 12, 2016, the ZBA accepted a letter to withdraw without prejudice the Country Club Estates Petition.

140. On May 16, 2017, Halifax Building Inspector issues Mr. Edward Johnson building permits 115-17/116-17 & 117-17/118-17.

141. On May 22, 2017, Mr. Gordon C Andrews sends a letter to Building Inspector Mr. Piccirilli request Enforcement of Zoning on Building Permits 115-17/116-17 & 117-17/118-17.

142. On May 24, 2017, Mr. Piccirilli sends a letter responding to the enforcement request denying enforcement.

143. On June 14, 2017, Mr. Andrews files an administrative appeal of denial of request for Zoning Enforcement on 2, 4, 9, 11 Amanda's Way, Halifax, 264 Elm Street.

144. On June 14, 2017, Mr. Andrews files an administrative appeal of the issuance of four (4) building permits to the Party Trust of Pembroke to construct units 1,2, 7, and 8, at 2, 4, 9, and 11 Amanda's Way/264 Elm Street, Halifax issued May 16, 2017.

145. On July 10, 2017, Halifax Zoning Board of Appeals ("ZBA") opens public hearing to hear Petition #868 and Petition #869 filed by Mr. Andrews.

146. This meeting was videotaped by Area 58 link to: https://youtu.be/G1U-Y0K4_L8

147. Kozhaya Nessralla fails to disclose that his primary home at 69 Summit Street abuts land owned by the Party Trust members Edward Johnson and Amanda Monti.

148. Attorney Gary Brackett represents Mr. Andrews.

149. Attorney Adam Brodsky represents the Party Trust.

150. Halifax Land-use attorney represents the Halifax Zoning Board of Appeals.

151. Land-use attorney Hucksam states there are two fundamental problems based on his review: (1) the one hundred fifty (150) foot frontage requirement in the AR District; (2) fundamental problem with the proposed development is one building per lot.

152. Town Counsel agreed with Attorney Brackett.

153. Against the advice of its own counsel, the ZBA votes 4 to 1 in favor of Mr. Nessralla's motion to allow the building permits to remain in effect with construction to the site of Lots A and D, at the builder's risk and to continue the public hearing for Petitions #868 and #869 until August 14, 2017 at 7:15 PM.

154. On August 14, 2017, Halifax Zoning Board of Appeals ("ZBA") continues public hearings on Petitions #868 and #869; this meeting was videotaped by Area 58 link to: https://youtu.be/FoD9Uxb2PK8

155. Town Counsel states that his opinion remains the same after reviewing Mr. Brodsky's and Mr. Brackett's written submissions: the project does not comply with the one-building per lot and also lacks the required one hundred fifty (150) foot frontage.

156. Mr. Hucksam explains that the ZBL does not give the ZBA the authority to vary provisions, that the grant of a special permit is only authorization for the use, and does not affect the obligation to comply with other provisions of the ZBL.

157. Town Counsel opines that the Party Trust's argument that no frontage requirement applies to a project like this is not a reasonable reading of the Zoning Bylaw.

158. Against the advice of its own counsel, the ZBA voted to reject Mr. Andrews' appeals.

159. On September 7, 2017, Mr. Andrews files an appeal of the Halifax Zoning Board of Appeals decision in Land Court, 17 MISC 000507.

160. On April, 4, 2018, ZMA member Kozhaya Nessralla's son, Naja, purchased 17.44 acres that abuts his primary residence at 69 Summit Street Halifax, where he resides with his father from Amanda Monti and Edward Johnson for a fraction of its assessed value.

161. On July 3, 2018, By Order of the Court the August 22, 2017 Halifax Zoning Board of Appeals decision was remanded back to the ZBA.

162. On August 13, 2018, the ZBA held a remand hearing.

163. On January 9, 2019, the Court denies Mr. Andrews Summary Judgement and orders a trial.

164. On May 18, 2019, Mr. Andrews was elected to the Halifax Board of Selectmen.

165. In late May of 2019, the Court with Judge Vhay presiding held a trial in Land Court in Boston.

166. On July 1, 2019, the Court releases his Findings of Fact and Conclusions of Law on 17 MISC 000507.

167. On July 1, 2019, the Court issues Order to have building permits 115-17/116-17 & 117-17/118-17 to be revoked by Zoning Board of Appeals.

**Count I**
**G.L. c. 12, § 11I, Violation of Massachusetts Declaration of Rights, Article 10 and the**
**Fourteenth Amendment to the United States Constitution**

1. The Plaintiff repeats and re-alleges all allegations set forth above, and incorporates the same herein by reference.

2. Article 10 of the Declaration of Rights of the Massachusetts Constitution provides all Massachusetts residents with the right to equal protection and due process of law with respect to their enjoyment of life, liberty, and property.

3. By their actions described herein, which included threats, intimidation, and/or coercion, Town Officials, including without limitation, Mr. Piccirilli, and members of the ZBA, and the Town Administrator, violated Mr. Andrews' rights to equal protection and due process.

4. These violations were done intentionally and/or taken with reckless indifference to Mr. Andrews' constitutional rights.

5. As a result of these violations, Mr. Andrews has suffered damages, harm, humiliation, pain, and distress for which the Town Defendants are liable.

**Count II**
**42 U.S.C. § 1983, Violation of the Fourteenth Amendment to the United States Constitution**

1. The Plaintiff repeats and re-alleges all allegations set forth above, and incorporates the same herein by reference.

2. The Fourteenth Amendment to the U.S. Constitution gives all citizens the right to equal protection and due process of law.

3. Mr. Picirilli acting arbitrarily and capriciously and for personal gain, within the scope of his employment instituted a Policy to not enforce the clear requirements of the Zoning By Law with respect to Multi-Family Developments.

4. That policy caused a violation of Mr. Andrews' rights as an abutter that the requirements of the Zoning By Law be uniformly applied.

5. That Policy was approved by a majority of the members of the ZBA who were acting within the scope of their employment and with reckless disregard for and/or deliberate indifference to Mr. Andrews rights.

15

6. The Town Administrator, acting within the scope of his employment, had actual knowledge of the Policy and tacitly approved it, with reckless disregard for and/or deliberate indifference to Mr. Andrews rights.

7. The Building Inspector's and ZBA's land use decisions were motivated by personal gain, individual discriminatory intent, and/or political considerations.

8. By their actions described herein, taken under color of state law, Town Officials, including without limitation, Mr. Piccirilli, and members of the ZBA, and the Town Administrator, and the members of the Board of Selectmen, violated Mr. Andrews' rights to equal protection and due process.

9. These violations were done intentionally and/or taken with reckless indifference to Mr. Andrews' constitutional rights.

10. As a result of these violations, Mr. Andrews has suffered damages, harm, humiliation, pain, and distress for which the Town Defendants are liable.

## JURY TRIAL DEMANDED

The Plaintiff demands a trial by jury for all counts so triable.

WHEREFORE, the Plaintiff demands judgment against the Defendants and requests that this Honorable Court:

a) Find that the Defendants deprived Mr. Andrews of his federal and state constitutional rights;

b) Enter an award against the Town and Town officials for compensatory and punitive damages for the injuries Mr. Andrews suffered as the result of those deprivations;

c) Award Mr. Andrews his reasonable attorneys' fees for violation of his constitutional rights; and

d) Grant such further and other relief as this Honorable Court deems just and proper.

Respectfully submitted by
the Plaintiff through his counsel,

Ginny S. Kremer, Esq. BBO#629147
Christopher Alphen, Esq.
Blatman Bobrowski & Haverty LLC
9 Damonmill Square Suite 4A4
Concord, MA 01742
(978) 371.2226
ginny@bbhlaw.net
Date: 5/15/2020

A TRUE COPY ATTEST

Clerk of Courts

2

| CIVIL ACTION COVER SHEET | DOCKET NUMBER 2083CV00401 | Trial Court of Massachusetts The Superior Court |
|---|---|---|

| PLAINTIFF(S): | Gordon C. Andrews | COUNTY Plymouth |
|---|---|---|
| ADDRESS: | 244 Elm Street | |
| | Halifax MA 02338 | DEFENDANT(S): Town of Halifax et al. |

| ATTORNEY: | Ginny S. Kremer | |
|---|---|---|
| ADDRESS: | Blatman Bobrowski & Haverty, LLC | ADDRESS: 499 Plymouth Street Halifax MA 02338 |
| | 9 Damonmill Square Suite 4A4 | |
| | Concord MA 01742 | |
| BBO: | 629147 | |

## TYPE OF ACTION AND TRACK DESIGNATION (see reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| ADI | Constitutional Action involving municipality | A | [X] YES   [ ] NO |

*If "Other" please describe:

## STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

### TORT CLAIMS
(attach additional sheets as necessary)

A. Documented medical expenses to date:
   1. Total hospital expenses ............................................................................... $ _____
   2. Total doctor expenses ................................................................................ $ _____
   3. Total chiropractic expenses ....................................................................... $ _____
   4. Total physical therapy expenses ................................................................ $ _____
   5. Total other expenses (describe below) ....................................................... $ _____
                                                                      Subtotal (A): $ _____

B. Documented lost wages and compensation to date ......................................... $ _____
C. Documented property damages to dated ........................................................ $ _____
D. Reasonably anticipated future medical and hospital expenses .......................... $ _____
E. Reasonably anticipated lost wages ................................................................ $ _____
F. Other documented items of damages (describe below) .................................... $ _____

G. Briefly describe plaintiff's injury, including the nature and extent of injury:

                                                                      TOTAL (A-F):$ _____

### CONTRACT CLAIMS
(attach additional sheets as necessary)

Provide a detailed description of claims(s):

                                                                      TOTAL: $ _____

Signature of Attorney/Pro Se Plaintiff: X _____   Date: 5/15/20

**RELATED ACTIONS:** Please provide the case number, case name, and county of any related actions pending in the Superior Court.

## CERTIFICATION PURSUANT TO SJC RULE 1:18

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

Signature of Attorney of Record: X _____   Date: 5/15/20

A TRUE COPY ATTEST

Clerk of Courts

# CIVIL ACTION COVER SHEET INSTRUCTIONS
## SELECT CATEGORY THAT BEST DESCRIBES YOUR CASE

**AC Actions Involving the State/Municipality \***

AA1 Contract Action involving Commonwealth,
    Municipality, MBTA, etc. (A)
AB1 Tortious Action involving Commonwealth,
    Municipality, MBTA, etc. (A)
AC1 Real Property Action involving
    Commonwealth, Municipality, MBTA etc. (A)
AD1 Equity Action involving Commonwealth,
    Municipality, MBTA, etc. (A)
AE1 Administrative Action involving
    Commonwealth, Municipality, MBTA,etc. (A)

**CN Contract/Business Cases**

A01 Services, Labor, and Materials (F)
A02 Goods Sold and Delivered (F)
A03 Commercial Paper (F)
A04 Employment Contract (F)
A06 Insurance Contract (F)
A08 Sale or Lease of Real Estate (F)
A12 Construction Dispute (A)
A14 Interpleader (F)
BA1 Governance, Conduct, Internal
    Affairs of Entities (A)
BA3 Liability of Shareholders, Directors,
    Officers, Partners, etc. (A)
BB1 Shareholder Derivative (A)
BB2 Securities Transactions (A)
BC1 Mergers, Consolidations, Sales of
    Assets, Issuance of Debt, Equity, etc. (A)
BD1 Intellectual Property (A)
BD2 Proprietary Information or Trade
    Secrets (A)
BG1 Financial Institutions/Funds (A)
BH1 Violation of Antitrust or Trade
    Regulation Laws (A)
A99 Other Contract/Business Action - Specify (F)

\* Choose this case type if ANY party is the
Commonwealth, a municipality, the MBTA, or any
other governmental entity UNLESS your case is a
case type listed under Administrative Civil Actions
(AA).

† Choose this case type if ANY party is an
incarcerated party, UNLESS your case is a case
type listed under Administrative Civil Actions (AA)
or is a Prisoner Habeas Corpus case (E97).

**ER Equitable Remedies**

D01 Specific Performance of a Contract (A)
D02 Reach and Apply (F)
D03 Injunction (F)
D04 Reform/ Cancel Instrument (F)
D05 Equitable Replevin (F)
D06 Contribution or Indemnification (F)
D07 Imposition of a Trust (A)
D08 Minority Shareholder's Suit (A)
D09 Interference in Contractual Relationship (F)
D10 Accounting (A)
D11 Enforcement of Restrictive Covenant (F)
D12 Dissolution of a Partnership (F)
D13 Declaratory Judgment, G.L. c.231A (A)
D14 Dissolution of a Corporation (F)
D99 Other Equity Action (F)

**PA Civil Actions Involving Incarcerated Party †**

PA1 Contract Action involving an
    Incarcerated Party (A)
PB1 Tortious Action involving an
    Incarcerated Party (A)
PC1 Real Property Action involving an
    Incarcerated Party (F)
PD1 Equity Action involving an
    Incarcerated Party (F)
PE1 Administrative Action involving an
    Incarcerated Party (F)

**TR Torts**

B03 Motor Vehicle Negligence - Personal
    Injury/Property Damage (F)
B04 Other Negligence - Personal
    Injury/Property Damage (F)
B05 Products Liability (A)
B06 Malpractice - Medical / Wrongful Death (A)
B07 Malpractice - Other (A)
B08 Wrongful Death, G.L. c.229 §2A (A)
B15 Defamation (A)
B19 Asbestos (A)
B20 Personal Injury - Slip & Fall (F)
B21 Environmental (F)
B22 Employment Discrimination (F)
BE1 Fraud, Business Torts, etc. (A)
B99 Other Tortious Action (F)

**RP Real Property**

C01 Land Taking (F)
C02 Zoning Appeal, G.L. c. 40A (F)
C03 Dispute Concerning Title (F)
C04 Foreclosure of a Mortgage (X)
C05 Condominium Lien & Charges (X)
C99 Other Real Property Action (F)

**MC Miscellaneous Civil Actions**

E18 Foreign Discovery Proceeding (X)
E97 Prisoner Habeas Corpus (X)
E22 Lottery Assignment, G.L. c. 10 §28 (X)

**AB Abuse/Harassment Prevention**

E15 Abuse Prevention Petition, G.L. c. 209A (X)
E21 Protection from Harassment, G.L. c. 258E(X)

**AA Administrative Civil Actions**

E02 Appeal from Administrative Agency,
    G.L. c. 30A (X)
E03 Certiorari Action, G.L. c.249 §4 (X)
E05 Confirmation of Arbitration Awards (X)
E06 Mass Antitrust Act, G. L. c. 93 §9 (A)
E07 Mass Antitrust Act, G. L. c. 93 §8 (X)
E08 Appointment of a Receiver (X)
E09 Construction Surety Bond, G.L. c. 149
    §§29, 29A (A)
E10 Summary Process Appeal (X)
E11 Worker's Compensation (X)
E16 Auto Surcharge Appeal (X)
E17 Civil Rights Act, G.L. c.12 §11H (A)
E24 Appeal from District Court
    Commitment, G.L. c.123 §9(b) (X)
E25 Pleural Registry (Asbestos cases)
E94 Forfeiture, G.L. c.265 §56 (X)
E95 Forfeiture, G.L. c.94C §47 (F)
E99 Other Administrative Action (X)
Z01 Medical Malpractice - Tribunal only,
    G.L. c. 231 §60B (F)
Z02 Appeal Bond Denial (X)

**SO Sex Offender Review**

E12 SDP Commitment, G.L. c. 123A §12 (X)
E14 SDP Petition, G.L. c. 123A §9(b) (X)

**RC Restricted Civil Actions**

E19 Sex Offender Registry, G.L. c.6 §178M (X)
E27 Minor Seeking Consent, G.L. c.112 §12S (X)

**TRANSFER YOUR SELECTION TO THE FACE SHEET**

**EXAMPLE:**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B03 | Motor Vehicle Negligence-Personal Injury | F | ☒ YES    ☐ NO |

## STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

**DUTY OF THE PLAINTIFF -** The plaintiff shall set forth, on the face of the civil action cover sheet (or attach additional sheets as necessary), a statement specifying the facts on which the plaintiff relies to determine money damages. A copy of such civil action cover sheet, including the statement as to the damages, shall be served with the complaint. **A clerk-magistrate shall not accept for filing a complaint, except as otherwise provided by law, unless it is accompanied by such a statement signed by the attorney or pro se party.**

**DUTY OF THE DEFENDANT -** If the defendant believes that the statement of damages filed by the plaintiff is inadequate, the defendant may file with his/her answer a statement specifying the potential damages which may result if the plaintiff prevails.

## A CIVIL COVER SHEET MUST BE FILED WITH EACH COMPLAINT.
## FAILURE TO COMPLETE THIS COVER SHEET THOROUGHLY AND ACCURATELY
## MAY RESULT IN DISMISSAL OF THIS ACTION.

8/13/20 KM

3

**COMMONWEALTH OF MASSACHUSETTS**

Plymouth, ss.

**SUPERIOR COURT**
**NO. 2083CV00401**

**GORDON C. ANDREWS,**

**Plaintiff,**

v.

**The Town of Halifax through its Board of**
**Selectmen, Zoning Board of Appeals and**
**Planning Board; and Thomas Millias, Robert**
**Piccirilli, Kozhaya Nessralla, and Charles**
**Seelig, in their Individual and Official**
**Capacities as Officials of the Town of Halifax,**

**Defendants.**

```
                                    FILED
                        COMMONWEALTH OF MASSACHUSETTS
                      SUPERIOR COURT DEPT. OF THE TRIAL COURT
                                PLYMOUTH COUNTY

                              AUG  1 3  2020

                                 Clerk of Court
```

## FIRST AMENDED COMPLAINT AND JURY DEMAND

### THE PARTIES

1. The Plaintiff, Gordon Cunningham Andrews (Mr. Andrews), is an adult resident of the Town of Halifax, Plymouth County, Massachusetts, with an address of 244 Elm Street.

2. Defendant, Town of Halifax, ("the Town"), is a municipal corporation organized under the laws of the Commonwealth with its principal office located at 499 Plymouth Street, Halifax MA 02338; the Halifax Board of Selectmen, Zoning Board of Appeals, and Planning Board are all duly constituted Boards of the Town with the same principal address.

3. The Defendant, Thomas Millias, (Mr. Tom Millias), is an adult resident of the Town of Halifax, with a street address of 357 South Street, Halifax, Plymouth County, Massachusetts.

4. Defendant Tom Millias has at all relevant times been an elected member of the Town of Halifax's Board of Selectmen ("the Board").

5. The Defendant, Robert Piccirilli, (Mr. Piccirilli) is an adult resident of the Town of Halifax, with a street address of 20 Paradise Lane, Halifax, Plymouth County, Massachusetts.

6. Defendant, Piccirilli is currently the appointed Building Commissioner for the Town of Halifax, and formerly served as a member of the Halifax Planning Board ("Planning Board")

7. The Defendant, Kozhaya Nessralla, (Mr. Nessralla) is an adult resident of the Town of Halifax, with a street address of 69 Summit Street, Halifax, Plymouth County, Massachusetts.

8. Defendant Nessralla has at all relevant times been a member of the Halifax Zoning Board of Appeals ("ZBA").

9. The Defendant, Charles Seelig, is an adult resident of 12 Firglade Ave, Providence, Rhode Island.

10. The Defendant Charles Seelig has at all relevant times been the appointed Town Administrator of the Town of Halifax.

## JURISDICTION AND VENUE

11. Venue is appropriate in this Court under G.L. c. 223, §§1 and 8(3) as activities in question are within this judicial district and the conduct giving rise to this action took place within this judicial district.

12. Jurisdiction is appropriate in this Court under G.L. c. 212 §4.

## FACTUAL ALLEGATIONS

13. The current members of the Halifax Board of Selectmen as of August 1, 2020 are, Mr. Troy Garron, Mr. Thomas Millias, and Mr. Gordon C Andrews.

14. Ms. Kim Roy was a member of the Board of Selectmen until May 18, 2020.

15. The current members of the Halifax Zoning Board of Appeals as of August 1, 2020 are Robert Gaynor, Defendant Nessralla, Gerald Joy, Peter Parcellin, and Robert Durgin; the current alternate member is Daniel Borsari.

16. The current members of the Halifax Planning Board as of August 1, 2020 are Gordon R. Andrews, Mark Millias, Alan Dias, Richard Merry, and Amy Troup.

17. Defendant Millias was the Building Inspector from 1997 until 2015.

18. Defendant Piccirilli was the assistant Building Inspector from 1999 to 2015.

19. Defendant Piccirilli became the Building Inspector in 2015.

20. On February 21, 2003, Plaintiff Andrews purchased 244 Elm Street, Halifax, where he resides with his wife and young daughter in a single family home.

21. The land immediately abutting 244 Elm Street is identified on the Halifax Assessors' Map 15 as Lots 13 and 5, and Map 14, Lot 9 ("the Site").

22. At the time he purchased his home, the Site was undeveloped and in a natural vegetated state.

23. The Site was owned by the Bosworth family.

24. When Mr. Andrews purchased his home, he was aware that there had been previous attempts to develop the Site.

25. The Site comprises approximately 12 acres of predominately back land and has only a thin strip connecting it to Elm Street.

26. The Site has only 74.75 feet of frontage on Elm Street and no frontage on any other street or way.

27. Each time the Bosworth family or a prospective buyer inquired about developing the Site, the Town through the Planning Board or other official responded that the Zoning By Law ("ZBL") required 110 ft. of frontage on an existing way for any new subdivision.

28. At that time it was the Town's position that the Site could only be developed as a single-family home under the Estate Lot provisions of the ZBL, § 167-16.

29. On January 14, 2005, Mr. Corrie S. Merritt, trustee of the Party Trust ("the Trust"), purchased the Site from the Bosworth family for $250,000.

30. Mr. Merritt represented to the Bosworths that he would build only a single-family home for himself on the Site and would not attempt any larger development.

31. In 2006, however, the Trust proposed to construct a 48-unit multifamily development on the Site pursuant to G.L. c. 40B.

32. On or about October 10, 2006, the Halifax Board of Selectmen ("the Board") held a public hearing on the Trust's 40B proposal.

33. The Trust later withdrew its 40B proposal.

34. On or about October 28, 2010, the Trust submitted plans to the Planning Board depicting a conventional subdivision on the Site.

35. The Trust later withdrew that proposal.

36. In 2012, the Trust again submitted plans to the Planning Board depicting a conventional subdivision on the Site named "Amanda's Estates."

37. The Trust later withdrew that proposal.

38. On May 8, 2014, the Trust submitted a site plan to the Planning Board proposing a multifamily development, also known as Amanda's Estates, on the Site.

39. The proposed site plan described in the preceding paragraph depicted the Site as a single 12+ acre lot with all proposed residential buildings located thereon.

40. At a Planning Board meeting during which the Trust's proposal was discussed, another developer, Halifax Trails, LLC ("Halifax Trails") presented its proposal to construct a multifamily development on land located off of Monponsett Street in Halifax.

41. At that meeting, Halifax Trails acknowledged that the ZBL required that each building in a multifamily development be located on an individual lot with continuous frontage on a public or private way.  ZBL 167-17.D(2)(a).

42. At that meeting, Halifax Trails represented to the Planning Board that it would require frontage variances for at least some of the lots it was proposing to create to locate each building in its multifamily development.

43. On June 19, 2014, the Planning Board discussed both the multifamily developments proposed by the Trust and by Halifax Trails.

44. Present at that meeting were Debra Tinkam and Robert Gaynor, then members of the ZBA.

45. Town Administrator Charles Seelig and Town Land Use Counsel Richard Hucksam opined in writing that the requirement of 167-7.D(2)(a) that each building in a multifamily development be located on an individual lot required rejection of any plan that did not depict each proposed building on an individual lot.

46. The Trust thereafter caused its proposed site plan to be revised.

47. The Trust's new proposed site plan depicted six duplexes, each sited on an individual "lot" with continuous frontage on a proposed way called "Amanda's Way."

48. The Planning Board approved the Trust's site plan as revised.

49. Defendant Piccirilli was a member of the Planning Board and signed the site plan approval letter on behalf of the Board.

4

50. In addition to site plan approval, the ZBL required a special permit from the ZBA to allow the use of real property for multi-family residential.

51. The Trust's special permit application filed with the ZBA referred to the same plan set that the Planning Board had approved, which depicted each proposed duplex on an individual "lot" with frontage on a proposed way, "Amanda's Way."

52. The ZBA issued its special permit in 2015 based on those plans "the Approved Plans").

53. The ZBL required 110 feet of frontage to construct a new way to serve any new lots.

54. The Site, however, had only approximately 74 feet of frontage.

55. After the Planning Board and the ZBA issued approvals based on the Approved Plans, the Trust again caused its plans to be revised.

56. The revised plans depicted what were previously labeled "lots" as "phases," and the lot lines were removed and replaced with dashed lines ("Revised Plans").

57. The principals of the Trust had actual knowledge that any revisions to its Approved Plans were required to be submitted to the Planning Board and the ZBA for further review and approval.

58. The Trust did not submit its revised plans to the Planning Board or the ZBA.

59. The Trust submitted its Revised Plans to Defendant Piccirilli, who had by then been appointed Building Inspector.

60. The Trust submitted the Revised Plans to Defendant Piccirilli in connection with its application for building permits for two of the proposed duplexes.

61. Mr. Piccirilli had been a member of the Planning Board when it issued its site plan approval in 2014 based on the Approved Plans.

62. Mr. Piccirilli had actual knowledge that the Approved Plans depicted each proposed duplex on individual lots with frontage on the proposed new way.

63. Mr. Piccirilli had actual knowledge that a majority of the Planning Board issued site plan approval with the understanding that the Trust would create the lots and private way that its Approved Plans depicted via subdivision pursuant to the Subdivision Control Act.

64. Mr. Piccirilli had actual knowledge that the Trust would require frontage variances from the ZBA in order to create the lots that its Approved Plans depicted.

65. Mr. Piccirilli had actual knowledge that the Site did not meet the ZBL's frontage requirements for the creation of the private way its Approved Plans depicted.

66. Mr. Piccirilli had actual knowledge that the Trust did not submit its Revised Plans to the
Planning Board or the ZBA as required by the ZBL.

67. Mr. Piccirilli had actual knowledge that the Revised Plans had been altered to remove the
lot lines because the "lots" depicted in the Approved Plans because the Trust had not
created the lots.

68. Mr. Piccirilli "interpreted" the requirement of the ZBL that each building in a multifamily
development "be located on an individual lot with continuous frontage on a public or
private way," ZBL 167-7.D(2)(a) to <u>not</u> require each building in the Trust's multifamily
development to be locate on an individual lot with continuous frontage on a public or
private way.

69. Mr. Piccirilli's "interpretation" was that the word "lot" as used in ZBL 167-7.D(2)(a) did
not mean "lot" as that term is defined in the ZBL or understood as a matter of
Massachusetts land use law.

70. Mr. Piccirilli's "interpretation" was that the requirement that each "lot" have "continuous
frontage on a public or private way" as stated in ZBL 167-7.D(2)(a) did not require the
Trust to create the "private way" its Approved Plans depicted by any manner recognized
by Massachusetts land use law.

71. Rather, Mr. Piccirilli "interpreted" the ZBL to allow the Trust begin construction despite
the fact that it had not created the lots or way depicted in its approved plans.

72. Mr. Piccirilli had personal financial reasons to "interpret" the ZBL to not require the
creation of lots or ways for multi-family developments.

73. Specifically, Mr. Piccirilli and his business partner, Defendant Tom Millias ("the
Partners") are local real estate developers.

74. The ZBL requirements that each building in a multifamily development "be located on an
individual lot with continuous frontage on a public or private way," ZBL 167-7.D(2)(a),
prevents the development of lucrative multifamily projects on parcels of property that do
not have at least 110 feet of frontage on a way.

75. The ZBL requirements that each building in a multifamily development "be located on an
individual lot with continuous frontage on a public or private way," ZBL 167-7.D(2)(a),
imposes controls on the number of lots that can be created because each lot must meet
frontage requirements.

76. "Interpreting" the ZBL to allow multifamily developments to be sited on parcels that lack a minimum of 110 feet of frontage removes a major impediment lucrative multifamily development.

77. "Interpreting" the ZBL to allow "lots" in multifamily developments that lack the frontage required by the ZBL allows for denser developments, increasing the profitability to the developer.

78. Additionally, Defendant Partners Piccirilli and Tom Millias own a rental property comprised of two buildings on a single parcel.

79. The parcel referred to in the preceding paragraph does not meet the ZBL's requirement that each building in a multifamily development be located on an individual lot with continuous frontage on a public or private way.

80. The parcel described in the preceding paragraphs lacks the minimum area and frontage that would be required to subdivide the property into two individual lots.

81. Despite his actual knowledge that the Trust had not created the individual lots and private way depicted on its Approved Plans, Mr. Piccirilli approved the two building permit applications allowing the Trust to begin construction of two duplexes on the Site.

82. Mr. Piccirilli took the action described in the preceding paragraph in furtherance of his own financial interests as a Developer and owner of rental property, and to reward the Trust as a connected developer.

83. Because the Trust had not complied with its Approved Plans by creating the lots and the proposed way those plans depicted, Mr. Andrews appealed the issuance of the building permits to the ZBA.

84. Mr. Andrews also sought enforcement of the ZBL's requirements that each building in a multifamily development be located on an individual lot with adequate frontage on a public or private way, ZBL 167-7.D(2)(a).

85. At the ZBA hearing on Mr. Andrews' petitions for relief, ZBA counsel attorney Hucksam advised the ZBA that Mr. Andrews was correct and the ZBA should revoke the building permits.

86. The ZBA, acting against the legal advice of its own counsel, denied Mr. Andrews' petitions and upheld Mr. Piccirilli's issuance of the building permits.

87. The ZBA's written decision provided no justification for upholding the issuance of the building permits despite the fact that the Trust had not complied with its Approved Plans by creating the lots and the private way depicted thereon.

88. The ZBA's written decision provided no justification for its denial of Mr. Andrews' request for enforcement of the ZBL's requirement that each building in a multifamily development be located on an individual lot with adequate frontage on a public or private way, ZBL 167-7.D(2)(a).

89. ZBA member Defendant Nessralla denied Mr. Andrews' petitions in bad faith, based on his own personal financial interests, business relationships with the Trust's principals and associates, and/or personal animus against Mr. Andrews.

90. Other ZBA members were also motivated by personal financial interests, business relationships with the Trust's principals and associates, and/or personal animus against Mr. Andrews in casting their votes against the advice of their counsel.

91. ZBA counsel, attorney Hucksam, advised the Trust at the public hearing that construction could not continue while the building permits were under appeal.

92. The Trust's counsel responded that the Trust would decide whether or not to continue construction as a "business decision."

93. Mr. Andrews was forced to appeal the ZBA's decision by filing a civil action against the ZBA under G.L. c. 40A, section 17.

94. Mr. Piccirilli complained to members of the Board about attorney Hucksam because attorney Hucksam would not accept Mr. Piccirilli's baseless "interpretation" of the ZBL.

95. The Board thereafter interviewed attorneys.

96. During the interview process Board member Roy stated that the Town offered training for Board members regarding the state conflict of interest law, but did not require board members to complete the training.

97. Board members Roy and Garron acknowledged that some Halifax board and committee members serve on boards for their own ulterior motives.

98. The Board thereafter fired attorney Hucksam and replaced him with attorney Kim Salliant, an attorney who indicated willingness to defend the ZBA's baseless decision.

99. Board member Defendant Tom Millias voted to replace attorney Hucksam in bad faith, based not on the Town's best interests, but instead based on his own financial interests,

his business relationships with the Trust's principals, and/or his personal animus against Mr. Andrews.

100. On March 27, 2018, Town Administrator Defendant Seelig advised the Board that it should seek Town Meeting approval for the deletion of ZBL section 167-7.D(2)(a) that requires each building in a multifamily development be located on an individual lot with continuous frontage on a public or private way.

101. On May 14, 2018, at the Halifax Annual Town Meeting, a stack of leaflets appeared on the table used by the Town to place updated information for Town Meeting voters.

102. That leaflet disparaged Mr. Andrews' reputation.

103. At that Town Meeting, Mr. Seelig spoke on the Board's behalf on Article 55 which proposed to delete ZBL section 167-7.D(2)(a).

104. Mr. Seelig stated that section 167-7.D(2)(a) requires each building to be on a separate lot, and "the proposal from the Board of Selectmen is to in fact to eliminate the requirement of having individual lots for each building."

105. Town Meeting voters defeated Article 55, and section 167-7.D(2)(a) remained in the ZBL.

106. In or around 2018, the Trust's principals sold 17.5 acres of land ("17.5 Acre Parcel") for $1,000 to Naja Nessralla, the adult son of ZBA member Defendant Kozhaya Nessralla,

107. The real estate transaction described in the preceding paragraph was a *quid pro quo* for Nessralla's vote to deny Mr. Andrews the relief he requested from the ZBA.

108. The 17.5 Acre Parcel is land-locked, but abuts to the rear the property 69 Summit Street.

109. Defendant Kozhaya Nessralla and his adult son, Naja, reside at 69 Summit Street.

110. 69 Summit Street has frontage on Summit Street.

111. 69 Summit Street could be merged with the 17.5 Acre Parcel, allowing access for the formerly land locked parcel.

112. Allowing access to the 17.5 Acre Parcel would allow development of a lucrative multi-family project—just like the one the Trust is proposing at the Site.

113.    In 2018, the Land Court remanded the matter to the ZBA and ordered the ZBA to explain its 2017 Decision.

114.    During the ZBA proceedings that followed ("The Remand Proceedings"), the ZBA held an executive session with its new counsel, attorney Saillant.

115.    The ZBA thereafter met in open session and voted that neither the Planning Board's 2014 Site Plan Approval nor the ZBA's 2015 Special Permit required subdivision of the Site.

116.    Attorney Saillant authored the ZBA's "decision on remand" ("Remand Decision"), which purported to make numerous findings of fact.

117.    The ZBA had not made, or even discussed, any of the "findings of fact" that its decision reflected during the Remand Proceedings.

118.    The Remand Decision was an attempt to justify the ZBA's "interpretation" of the ZBL, and its denial of Mr. Andrews' requests for relief.

119.    The ZBA acted in violation of the Open Meeting Law during the remand proceedings because any discussion of the justification for its "interpretation" of the ZBL and/or its denial of Mr. Andrews' requests for relief took place behind closed doors.

120.    Members of the ZBA acted in bad faith during the remand proceedings, in an attempt to buttress the Town's position in the Land Court litigation.

121.    On August 20, 2018, there was a Special Town Meeting at which Article 10 proposed to increase Mr. Seelig's salary by $14,566 to a total of $110,000.

122.    Mr. Andrews spoke against Article 10.

123.    Town Meeting voted to pass over Article 10 and Mr. Seelig did not receive his raise.

124.    Mr. Seelig has a personal animus against Mr. Andrews.

125.    On April 8, 2019, Mr. Andrews stated at a ZBA meeting that Defendants Tom Millias and Piccirilli were business partners.

126.    Mr. Andrews also stated that Mr. Millias had improperly acted on a matters involving his own property in 2013 and 2014 when he was the Building Inspector.

127.    On April 10, 2019, Mr. Andrews petitioned Defendant Seelig and Town Counsel attorney Larry Mayo to investigate Mr. Tom Millias and Mr. Piccirilli's business partnership and their self-dealing within the town of Halifax Building Department.

128.     Mr. Tom Millias and Mr. Piccirilli's harbor a personal animus against Mr. Andrews.

129.     The Land Court held a trial in May of 2019 on Mr. Andrews' appeal of the ZBA's 2017 Decision.

130.     Prior to trial, the Land Court issued an order in which it stated that the trial would be broken into two "phases."

131.     The Order indicated that Mr. Andrews could not present his evidence of bad faith by town officials until "Phase Two" of the trial, which would only occur if Mr. Andrews prevailed on Phase One.

132.     Pursuant to the Court's order, the "only issue" on which Mr. Andrews could present evidence was whether the Planning Board's 2014 Site Plan Approval and the ZBA's 2015 Special Permit required the Trust to subdivide the Site.

133.     After trial, the Court issued a decision dated July 1, 2019 ("July 1, 2019 Decision").

134.     The July 1, 2019 Decision held that Planning Board's 2014 Site Plan Approval and the ZBA's 2015 Special Permit did require the Trust to subdivide the Site.

135.     The July 1, 2019 Decision held that the ZBA had illegally issued the building permits because the Approved Plans depicted lots and the Trust had not created lots.

136.     The Court specifically found that the Trust's principals had known that the Planning Board's approval required the creation of the lots under the Subdivision Control Law.

137.     The Court remanded the matter to the ZBA with an order that it revoke the building permits for Amanda's Estates.

138.     Mr. Andrews therefore prevailed in Phase I of the trial.

139.     The Court issued further rulings, however, rejecting Mr. Andrews' requests to proceed with Phase II of the trial.

140.     The Court never permitted Mr. Andrews to offer his evidence of bad faith on the part of various town officials.

141.     The July 1, 2019 Decision failed to rule on the central issue in the case: the correct interpretation of the ZBL 167-7.D(2)(a) which states that each building in a

multifamily development shall be located on an individual lot with continuous frontage on a public or private way ("the Central Issue").

142.     Because the July 1, 2019 Decision failed to rule on the Central Issue, the Trust was free to return to the Planning Board and ZBA in an attempt to seek new approvals to continue development.

143.     In or around 2019, the ZBA considered a special permit application for another multifamily development proposal at 395 Plymouth Street ("395 Plymouth Street").

144.     During the proceedings referred to in the preceding paragraph, Defendant Piccirilli recused himself acknowledging his conflict of interest with respect to the interpretation of the multifamily development provisions of the ZBL.

145.     Defendant Tom Millias also recused himself from appointing an alternate Building Inspector, also acknowledging his conflict of interest.

146.     The Board appointed Chris Carmichael as special zoning enforcement officer after at the Board's July 23, 2019 meeting.

147.     Despite their specific acknowledgments of their conflict of interest regarding the ZBL's requirements for multi-family developments, Defendants Piccirilli Tom Millias continued at all relevant times in official matters relating to the Trust's multifamily development.

148.     Because the Court's July 1, 2019 Decision failed to rule on the Central Issue, Town Officials could continue to act in bad faith on the Trust's further efforts.

149.     After the Court issued the July 1, 2019 Decision, the Trust sought and received multiple stays and continuance from the Court.

150.     In fact, the Trust spent 13 months attempting to secure approvals to continue development of its proposed 12 unit multi-family development on the Site which abuts Mr. Andrews' single family home.

151.     First, the Trust sought to amend its 2015 Special Permit by incorporating a new set of plans that depicted the parcel as a single large lot.

152.     On August 14, 2019, The Trust filed a request for a "waiver" of ZBL § 167-7(D)(2)(a) from the Halifax Planning Board.

153.    New land use counsel attorney Amy Kwesell opined that the Planning Board lacked authority to "waive" a substantive provision of the ZBL, and that only the ZBA could grant a variance.

154.    On October 17, 2019, the Trust filed Petition #910 with the ZBA, seeking to modify its 2015 Special Permit by deleting reference to Approved Plans (depicting 6 duplexes, each on an individual "lots") and substituting a new plan set dated September 18, 2019 ("New Plans") (depicting the parcel as a single large lot with six duplexes located thereon).

155.    After hearing on November 4, 2019, the ZBA denied the request for a modification.

156.    The vote described in the preceding paragraph was three members in favor of approving the modification and two opposed, which did not reach the super majority counsel opined was required.

157.    The ZBA's issued a written decision on November 20, 2019 in which each ZBA member stated in writing the justification for their vote.

158.    The ZBA members who voted in opposition to Trust's proposed modification stated that the New Plans failed to comply with 167-7(D)(2)(a), which was the Central Issue in the litigation.

159.    The ZBA members who voted in favor of the Trust's request did so in bad faith, for personal financial reasons, based on business relationships with the Trust's principals, and/or out of personal animus against Mr. Andrews.

160.    The Trust did not appeal the ZBA's November 2019 decision.

161.    The Trust then had another new plan set created ("Second New Plans").

162.    The Second New Plans, dated November 6, 2019, depicted the parcel divided into four "lots;" two of the "lots" had a single duplex located thereon; the other two "lots" each had two duplexes located thereon which were connected by a structure.

163.    Counsel Kwesell opined that the connecting structure rendered each set of two duplexes a single "building" comprised of four residential units.

164.    The Trust submitted the Second New Plans to the Planning Board seeking a modification of its 2014 site plan approval.

165.     Mr. Andrews objected to the Trust's petition after the Trust stated in an open meeting that it would not actually create the "lots" that its Second New Plans depicted.

166.     "Amanda's Way" was depicted on the Second New Plans as proving the frontage required by the ZBL for each of the "lots."

167.     The Trust stated that it would not take any steps to create "Amanda's Way" as a private way beyond simply constructing it.

168.     After hearing, by decision dated December 11, 2019, the Planning Board approved the modified plans by a vote of two members in favor and one opposed.

169.     The member opposed was Amy Troup.

170.     The Planning Board's decision was explicitly conditioned on the development meeting the Aquifer Protection requirements of ZBL 167-17.

171.     The Planning Board member who voted against the Trust's petition, Amy Troup, was later bullied by the Defendant Town Administrator Seelig and other Town officials, and was also stymied in performing her official duties in retaliation for her vote.

172.     The Trust filed Petition #915 with the ZBA seeking a modification of its special permit based on the Second New Plans.

173.     The ZBA opened a public hearing on January 13, 2020 on Petition #915.

174.     Mr. Andrews requested that Defendant Nessralla recuse himself due to his business relationship with the Trust's principals.

175.     Defendant Nessralla refused to recuse himself.

176.     Prior to the meeting, attorney Kwesell had advised in writing that, since the ZBA had acted unfavorably on the modification request in November of 2019, the ZBA should refer the petition to the Planning Board pursuant to § 167-22, which provides in relevant part:

> 167-22 Reconsideration of proposed changes.
> No appeal or petition for a variance under 167-21(A)(3) and no application for a special permit under 167-21(A)(2) which has been unfavorably acted upon by the Board of Appeals shall be considered on its merits by said Board within two (2) years after the vote of such unfavorable action, except with the unanimous consent of the Planning Board

177.     The ZBA continued its hearing to February 20, 2020.

178.    Peter Parcillin, the ZBA member who had voted against the Trust's previous applications on the basis of the requirements of 167-7.D(2)(a) had already indicated he could not attend a meeting on February 20, 2020, as it was school vacation week and he would be away.

179.    At the February 20, 2020 hearing, Mr. Andrews again requested that Defendant Nessralla recuse himself due to his business relationship with the Trust's principals.

180.    Mr. Nessralla again refused.

181.    Attorney Kwesell again opined that the ZBA should refer the matter to the Planning Board for a vote pursuant to §167-22.

182.    The minutes reflect that ZBA member Defendant Nessralla made the following motion: "That under Section 14, the [Zoning] Board has the power to allow them [*sic*] to accept the modification to the special permit under Petition #915 with a Unanimous voice vote of 'Yes' from all five (5) [ZBA] members present".

183.    The ZBA then voted to approve the Trust's petition for modification of its special permit by a vote of four members in favor and one opposed: "Motioned By Gerald Joy, Seconded by Kozhaya Nessrella, to accept/approve Petition #915 on the Party Trust's request that the Zoning Board of Appeals modify the 2015 special permit by deleting reference to prior plan set and adopt the 11/6/2019 Webby Plans under 167-7(D)(2)(a) with a Voice Vote four (4) 'YES' Borsari, Joy, Gaynor and Nessralla, and one (1) NO from Durgin)."

184.    Had the Chair scheduled the meeting at a time when ZBA member Peter Parcillin could be present, the likely result was that the Trust would not have received the four favorable votes it needed for its petition to pass.

185.    Mr. Andrews timely appealed the ZBA's decision by filing a Complaint in the Superior Court.

186.    The Trust then sought assignment of the matter to the Land Court judge that had failed to issue a decision on the Central Issue and prohibited Mr. Andrews from offering his evidence of bad faith of Town officials.

187.    Over Mr. Andrews' objection, the case was reassigned to the Land Court judge.

188.    After Mr. Andrews filed the Superior Court Complaint, by decision dated May 4, 2020, the ZBA found, as did the Planning Board in December of 2019, that the Trust

15

needed a special permit under 167-17 due to the Site's locating in the Aquifer Protection District.

189.     The Trust filed an application for the § 167-17 permit with the Planning Board.

190.     The Town Administrator and other Town officials refused the attempts of two Planning Board members, Amy Troup and Ashley DeSesa, from accessing public records concerning matters that were before the Planning Board.

191.     The actions referenced in the preceding paragraph were taken in retaliation for Ms. Troup's and Ms. DeSesa's faithful interpretation of the ZBL's provisions.

192.     On June 18, 2020, the Planning Board denied approval of the Trust's application for a special permit, citing 167-17(f)(16), which prohibits any use in the aquifer protection district other than single family use if the septic system is designed to process over 1500 gallons per day, since it was undisputed that the Trust's system exceed that by more than double.

193.     The Trust then sought and received yet another stay of the Court's Order and Judgment.

194.     On or about April 8, 2020, Mr. Andrews petitioned the Defendant Picirilli as and the ZBA for revocation of the modified building permits issued to the Trust.

195.     At the August 10, 2020 ZBA meeting, Defendant Nessralla again refused to recuse himself from the matter.

196.     The ZBA refused to acknowledge any of Mr. Andrews's arguments set forth in his petitions, and again voted in favor of the Trust.

197.     The Land Court's refusal to allow Mr. Andrews to offer evidence of the bad faith of town officials and the Court's failure to rule on the Central Issue in the case constitute special circumstances that rendered the remedies provided in G.L. c. 40A, which Mr. Andrews has pursued for over three years, unavailable to correct the wrongs committed by the Defendants and other town officials.

198.     Mr. Andrews has suffered damage to his home from the Trust's construction, as well as damage to his quiet enjoyment of his property.

199.     Mr. Andrews has also suffered damage to his mental health from the corrupt actions of officials of the Town he has lived in his entire life.

## Count I
## G.L. c. 12, section 11H, Violation of Article 10 of the Declaration of Rights of the Massachusetts Constitution
(The Town and Thomas Millias, Robert Piccirilli, Kozhaya Nessralla, Charles Seelig, Individually and in their capacities as Town Officials)

1. The Plaintiff repeats and re-alleges all allegations set forth above, and incorporates the same herein by reference.

2. Article 10 of the Declaration of Rights of the Massachusetts Constitution provides all residents with the right to equal protection and due process of law with respect to their enjoyment of life, liberty, and property.

3. By their actions described herein, the Town and its Officials deliberately and knowingly acted against their counsel's advice, flouting state and local law.

4. By their actions described herein, the Town and its Officials interfered with Mr. Andrews' right to the even handed and consistent enforcement of the Zoning By Law, and caused injury to his property and emotional damage to himself.

5. By their actions described herein, the interference with Mr. Andrews' rights was done by threats, intimidation, and/or coercion.

6. Specifically, by their actions, the Town and its Officials, as part of a scheme of harassment and intimidation, attempted to coerce the Plaintiff into forgoing his rights by use of government power for purposes of abuse and oppression.

7. By their actions, the Town and its Officials, harassed and attempted to intimidate other Town officials from exercising their duties in a proper manner.

8. As a result of these violations, Mr. Andrews has suffered damages, harm, humiliation, and extreme distress for which the Town and individual Defendants are liable.

## Count II
## 42 U.S.C. § 1983, Violation of the Fourteenth Amendment to the United States Constitution
(The Town and Thomas Millias, Robert Piccirilli, Kozhaya Nessralla, Charles Seelig, Individually and in their Capacities as Town Officials)

1. The Plaintiff repeats and re-alleges all allegations set forth herein, and incorporates the same by reference.

2. The Fourteenth Amendment to the U.S. Constitution gives all citizens the right to equal protection and due process of law.

3. By their actions described herein, taken under color of state law, the Town and its

Officials—especially but without limitation, Thomas Millias, Robert Piccirilli, Kozhaya Nessralla, and Charles Seelig--violated Mr. Andrews' rights to equal protection and substantive due process of law.

4. By their actions described herein, taken under color of law, the Town and its Officials deliberately and knowingly acted against their counsel's advice flouting state and local law.

5. By their actions described herein, taken under color of law, the Town and its Officials infringed on Mr. Andrews' right to the even handed and consistent enforcement of the Zoning By Law causing injury to his property.

6. By their actions taken herein, the Town and its Officials gave the Trust more favorable treatment than similarly situated developers because of their connections to and relationships with Town officials.

7. By their actions described herein, taken under color of law, the Town and its Officials used government power for purposes of oppression of Mr. Andrews' rights.

8. By their actions described herein, taken under color of law, the Town and its Officials used government power for purposes of rewarding connected parties and to advance their own financial and personal interests.

9. By their actions described herein, taken under color of law, the Town and its Officials used government power in a manner that is legally irrational and not keyed to any legitimate governmental interest.

10. The Town and its Officials treated the Trust more favorably than similarly situated developers, acted with personal animus against Mr. Andrews, and/or stood to profit personally from their actions.

11. The Land Court's refusal to allow Mr. Andrews to offer evidence of the bad faith of town officials and the Court's failure to rule on the Central Issue in the case constitute special circumstances that rendered the remedy provided in G.L. c. 40A, which Mr. Andrews has pursued for over three years, useless and unavailable to correct the wrong inflicted.

12. Town Officials' violations described herein were done intentionally and/or taken with reckless indifference to Mr. Andrews' constitutional rights.

13. As a result of these violations, Mr. Andrews has suffered damages, harm, humiliation, and extreme distress for which the Town and individual Defendants are liable.

**Count III**
**42 U.S.C. § 1983, Violation of the First Amendment to the United States Constitution**
(The Town and Thomas Millias, Robert Piccirilli, Kozhaya Nessralla, Charles Seelig,
Individually and in their Capacities as Town Officials)

1. The Plaintiff repeats and re-alleges all allegations set forth above, and incorporates the same herein by reference.

2. The First Amendment to the U.S. Constitution recognizes the right of all citizens to the freedom of speech and to petition government officials for a redress of their grievances.

3. By their actions described herein, taken under color of state law, the Town and its Officials--including without limitation, Mr. Piccirilli, Mr. Tom Millias, Mr. Kozhaya Nessralla, and Mr. Charlie Seelig, violated Mr. Andrews' rights to freedom of speech and to petition the Government for a redress of his grievances and to be free from retaliation for his exercise of his rights.

4. These violations were done intentionally and/or taken with reckless indifference to Mr. Andrews constitutional rights.

5. As a result of these violations, Mr. Andrews, has suffered damages, harm humiliation, pain and distress for which the Defendants are liable.

## JURY TRIAL DEMANDED

The Plaintiff demands a trial by jury for all counts so triable.

WHEREFORE, the Plaintiff demands judgment against the Defendants and requests that this Honorable Court:

a) Find that the Defendants deprived Mr. Andrews of his federal and state constitutional rights;

b) Enter an award against the Town and Town officials for compensatory damages for the injuries Mr. Andrews suffered as the result of those deprivations;

c) Enter an award against Thomas Millias, Robert Piccirilli, Kozhaya Nessralla, and Charles Seelig, in their individual capacities for punitive damages and other damages pursuant to 42 U.S.C. § 1983 and the MCRA;

d) Award Mr. Andrews his reasonable attorneys' fees for violation of his constitutional rights; and

e) Grant such further and other relief as this Honorable Court deems just and proper.

Respectfully submitted by
the Plaintiff through his counsel,
*Ginny S. Kremer*

_____
Ginny S. Kremer, Esq. BBO#629147
Christopher Alphen, Esq.
Blatman Bobrowski & Haverty LLC
9 Damonmill Square Suite 4A4
Concord, MA 01742
(978) 371.2226
ginny@bbhlaw.net
Date:   August 13, 2020

A TRUE COPY ATTEST

Clerk of Courts

20

| **Summons** | CIVIL DOCKET NO. | **Trial Court of Massachusetts** |
| | 2083 CV 00401 | **The Superior Court** |

| CASE NAME: | | | Robert S. Creedon, Jr. | Clerk of Courts |
| | | | Plymouth | County |
| | Gordon C. Andrews | Plaintiff(s) | COURT NAME & ADDRESS: | |
| | vs. | | Plymouth Superior Court | |
| | | | 72 Belmont Street | |
| | Town of Halifax, et al | Defendant(s) | Brockton, MA 02301 | |

FILED
COMMONWEALTH OF MASSACHUSETTS
SUPERIOR COURT DEPT. OF THE TRIAL COURT
PLYMOUTH COUNTY

AUG 14 2020

Plymouth Clerk of Court

THIS SUMMONS IS DIRECTED TO   Robert Piccirilli   (Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's complaint filed against you is attached to this summons and the original complaint has been filed in the Plymouth Superior Court.

**YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1. **You must respond to this lawsuit in writing within 20 days.**

If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

2. **How to Respond.**

To respond to this lawsuit, you must file a written to response with the court **and** mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:

a) Filing your **signed original** response with the Clerk's Office for Civil Business, Plymouth Superior Court
52 Obery St., #2041, Plymouth, MA 02360   (address), by mail or in person **AND**

b) Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following address:

Ginny Kremer, ESQ.     Blatman, Bobrowski & Haverty, LLC
9 Damonmill Square, Suite 4A4
Concord, MA 01742

3. **What to Include in Your Response.**

An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your court no more than 10 days after sending your Answer.

A TRUE COPY ATTEST

Clerk of Courts

3 (cont). You can also respond to a Complaint by filing a **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12.** If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at:

www.mass.gov/courts/case-legal-res/rules_of_court

### 4. Legal Assistance.

You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

### 5. Required Information on All Filings:

The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. __Judith Fabricant__ , Chief Justice on _____ , 20 ____ . (Seal)

Clerk-Magistrate _____

Note: The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

---

PROOF OF SERVICE OF PROCESS

---



**Plymouth County Sheriff's Office**     22 Cottage Street, Brockton MA  02301   Telephone (508) 580-2110
**Plymouth, SS**

**8/14/2020**

**I hereby certify and return that after attempting personal service on 8/14/2020 at 9:45 AM I served a true and attested copy of the Summons, First Amended Complaint and Jury Demand in this action in the following manner: To wit, by leaving at the last and usual place of abode of Robert Piccirilli 20 Paradise Lane Halifax, MA 02338  and by mailing an attested copy of the summons 1st class to the above address on 8/14/2020.  Attest ($10.00) Basic Service Fee ($20.00) Conveyance ($4.50) Postage and Handling ($5.00) Travel ($6.40) Total: $45.90**
**Left with adult male, Matt Piccirilli**

**Deputy Sheriff David Coache (Office)**

_David Coache_
**Deputy Sheriff**

Date:

| **Summons** | CIVIL DOCKET NO. | **Trial Court of Massachusetts** |
| | 20**83** CV 00401 | **The Superior Court** |

| CASE NAME: | | Robert S. Creedon, Jr. | Clerk of Courts |
| | | Plymouth | County |
| Gordon C. Andrews | Plaintiff(s) | COURT NAME & ADDRESS: | |
| vs. | | Plymouth Superior Court | |
| The Town of Halifax, et al | | 72 Belmont Street | |
| | Defendant(s) | Brockton, MA 02300 | |

FILED
COMMONWEALTH OF MASSACHUSETTS
SUPERIOR COURT DEPT. OF THE TRIAL COURT
PLYMOUTH COUNTY

AUG 1 4 2020

THIS SUMMONS IS DIRECTED TO **Thomas Millias**

(Defendant's name)

Clerk of Court

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the **Plymouth Superior** Court.
**YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1. **You must respond to this lawsuit in writing within 20 days.**

If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

2. **How to Respond.**

To respond to this lawsuit, you must file a written to response with the court **and** mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:

   a) Filing your **signed original** response with the Clerk's Office for Civil Business, **Plymouth Superior** Court **52 Obery St., #2041, Plymouth, MA 02360** (address), by mail or in person **AND**

   b) Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following address:

   Ginny Kremer, Esq.
   Blatman, Bobrowski & Haverty, LLC
   9 Damonmill Square, Suite 4A4
   Concord, MA 01742

3. **What to Include in Your Response.**

An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your court no more than 10 days after sending your Answer.

A TRUE COPY ATTEST

Clerk of Courts

3 (cont). You can also respond to a Complaint by filing a **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12**. If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at:

www.mass.gov/courts/case-legal-res/rules_of_court

### 4. Legal Assistance.

You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

### 5. Required Information on All Filings:

The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Judith Fabricant _____ , Chief Justice on _____ , 20____ . (Seal)

Clerk-Magistrate _____

Note: The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

---

## PROOF OF SERVICE OF PROCESS

---

**Plymouth County Sheriff's Office**          22 Cottage Street, Brockton MA  02301   Telephone (508) 580-2110
**Plymouth, SS**

**8/14/2020**

**I hereby certify and return that after attempting personal service on 8/14/2020 at 10:04 AM I served a true and attested copy of the Summons, First Amended Complaint and Jury Demand in this action in the following manner: To wit, by leaving at the last and usual place of abode of Thomas Millias 357 South Street Halifax, MA 02338  and by mailing an attested copy of the summons 1st class to the above address on 8/14/2020.  Attest ($10.00) Basic Service Fee ($20.00) Conveyance ($4.50) Postage and Handling ($5.00) Travel ($6.40) Total: $45.90**
**Left with adult female**

**Deputy Sheriff**

**Deputy Sheriff David Coache (Office)**

Date:

| Summons | CIVIL DOCKET NO. | Trial Court of Massachusetts |
| --- | --- | --- |
| | 2083 CV 00401 | The Superior Court |

| CASE NAME: | | Robert S. Creedon, Jr. | Clerk of Courts |
| --- | --- | --- | --- |

CASE NAME:

Gordon C. Andrews

Plaintiff(s)

vs.

Town of Halifax, et al

Defendant(s)

Robert S. Creedon, Jr.          Clerk of Courts

Plymouth          County

COURT NAME & ADDRESS:

Plymouth Superior Court

72 Belmont Street

Brockton, MA 02301

FILED
COMMONWEALTH OF MASSACHUSETTS
SUPERIOR COURT DEPT. OF THE TRIAL COURT
PLYMOUTH COUNTY

AUG 1 4 2020

Clerk of Court

THIS SUMMONS IS DIRECTED TO   Kozhaya Nessralla

(Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the   Plymouth Superior   Court.

**YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1. **You must respond to this lawsuit in writing within 20 days.**

If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

2. **How to Respond.**

To respond to this lawsuit, you must file a written to response with the court **and** mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:

   a) Filing your **signed original** response with the Clerk's Office for Civil Business, Plymouth Superior   Court 52 Obery Street, #2041, Plymouth, MA 02360 (address), by mail or in person **AND**

   b) Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following address:
   Ginny Kremer, Esq.
   Blatman, Bobrowski & Haverty, LLC
   9 Damonmill Square, Suite 4A4
   Concord, MA 01742

3. **What to Include in Your Response.**

An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your court no more than 10 days after sending your Answer.

A TRUE COPY ATTEST

Clerk of Courts

3 (cont). You can also respond to a Complaint by filing a **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12**. If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at:

www.mass.gov/courts/case-legal-res/rules_of_court

### 4. Legal Assistance.

You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

### 5. Required Information on All Filings:

The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. ___Judith Fabricant___ , Chief Justice on _____ , 20____ . (Seal)

Clerk-Magistrate 

Note: The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

---

## PROOF OF SERVICE OF PROCESS

**Plymouth County Sheriff's Office**     22 Cottage Street, Brockton MA  02301   Telephone (508) 580-2110
**Plymouth, SS**

**8/14/2020**

**I hereby certify and return that after attempting personal service on 8/14/2020 at 10:15 AM I served a true and attested copy of the Summons, First Amended Complaint and Jury Demand in this action in the following manner: To wit, by leaving at the last and usual place of abode of Kozhaya Nessralla 69 Summit Street Halifax, MA 02338  and by mailing an attested copy of the summons 1st class to the above address on 8/14/2020.  Attest ($10.00) Basic Service Fee ($20.00) Conveyance ($4.50) Postage and Handling ($5.00) Travel ($6.40) Total: $45.90**
**Left with adult male, Ken Coulstring**

**Deputy Sheriff David Coache (Office)**

David Coache
**Deputy Sheriff**

Date:

rev. 1/2019

| **Summons** | CIVIL DOCKET NO.<br><br>2083 CV 00401 | **Trial Court of Massachusetts**<br>**The Superior Court** |
|---|---|---|

| CASE NAME:<br><br>Gordon C. Andrews<br><br>Plaintiff(s)<br><br>vs.<br><br>The Town of Halifax, et al<br><br>Defendant(s) | Robert S. Creedon, Jr.                    Clerk of Courts<br><br>Plymouth                                      &      County<br><br>COURT NAME & ADDRESS:<br><br>Plymouth Superior Court<br><br>72 Belmont Street<br><br>Brockton, MA 02301 |
|---|---|

THIS SUMMONS IS DIRECTED TO _____ The Town of Halifax
Zoning Board of Appeals _____

FILED
COMMONWEALTH OF MASSACHUSETTS
SUPERIOR COURT DEPT. OF THE TRIAL COURT
PLYMOUTH COUNTY

AUG 1 4 2020
(Defendant's name)

Clerk of Court

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the   Plymouth Superior   Court.

**YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1. **You must respond to this lawsuit in writing within 20 days.**

If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

2. **How to Respond.**

To respond to this lawsuit, you must file a written to response with the court **and** mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:

   a) Filing your **signed original** response with the Clerk's Office for Civil Business,   Plymouth Superior   Court

   52 Obery Street, #2041, Plymouth, MA 02360 (address), by mail or in person **AND**

   b) Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following address:

   Ginny Kremer, Esq.                     Blatman, Bobrowski & Haverty, LLC
                                          9 Damonmill Square, Suite 4A4
                                          Concord, MA 01742

3. **What to Include in Your Response.**

An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your court no more than 10 days after sending your Answer.

A TRUE COPY ATTEST

Clerk of Courts

3 (cont). You can also respond to a Complaint by filing a **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12**. If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at:

www.mass.gov/courts/case-legal-res/rules_of_court

### 4. Legal Assistance.

You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

### 5. Required Information on All Filings:

The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. __Judith Fabricant__ , Chief Justice on _____ , 20____ . (Seal)

Clerk-Magistrate 

Note: The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

---

## PROOF OF SERVICE OF PROCESS

**Plymouth County Sheriff's Office**
**Plymouth, SS**     22 Cottage Street, Brockton MA 02301   Telephone (508) 580-2110

**8/14/2020**

I hereby certify and return that on 8/14/2020 at 10:00 AM I served a true and attested copy of the Summons, First Amended Complaint and Jury Demand in this action in the following manner: To wit, by delivering in hand to The Town of Halifax Zoning Board of Appeals at 499 Plymouth Street Halifax, MA 02338 Attest ($5.00) Basic Service Fee ($30.00) Conveyance ($4.50) Postage and Handling ($3.00) Travel ($6.40) Total: $48.90

**Deputy Sheriff David Coache (Office)**

_David Coache_
**Deputy Sheriff**

Date:

rev. 1/2019

| **Summons** | CIVIL DOCKET NO.<br>2083 CV 00401 | **Trial Court of Massachusetts**<br>**The Superior Court** |
|---|---|---|

| CASE NAME: | | |
|---|---|---|
| Gordon C. Andrews      Plaintiff(s)<br><br>vs.<br><br>The Town of Halifax , et al<br><br><br>Defendant(s) | | Robert S. Creedon, Jr.            Clerk of Courts<br><br>Plymouth                         County<br><br>COURT NAME & ADDRESS:<br><br>Plymouth Superior Court<br><br>72 Belmont Street<br><br>Brockton, MA 02301 |

THIS SUMMONS IS DIRECTED TO     The Town of Halifax
Board of Selectmen                        (Defendant's name)

COMMONWEALTH OF MASSACHUSETTS
SUPERIOR COURT DEPT. OF THE TRIAL COURT
PLYMOUTH COUNTY

AUG 1 4 2020

Clerk of Court

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the Plymouth Superior Court.

**YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1. **You must respond to this lawsuit in writing within 20 days.**

If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

2. **How to Respond.**

To respond to this lawsuit, you must file a written to response with the court **and** mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:

    a) Filing your **signed original** response with the Clerk's Office for Civil Business, Plymouth Superior Court 52 Obery Street, #2041, Plymouth, MA 02360 (address), by mail or in person **AND**

    b) Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following address:
    Ginny Kremer

Bickman, Bobrowski & Haverty, LLC
9 Damonmill Square, Suite 4A4
Concord, MA 01742

3. **What to Include in Your Response.**

An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your court no more than 10 days after sending your Answer.

A TRUE COPY ATTEST

Clerk of Courts

3 (cont). You can also respond to a Complaint by filing a **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12**. If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at:

www.mass.gov/courts/case-legal-res/rules_of_court

### 4. Legal Assistance.

You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

### 5. Required Information on All Filings:

The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Judith Fabricant , Chief Justice on _____ , 20 ___ . (Seal)

Clerk-Magistrate 

Note: The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

---

## PROOF OF SERVICE OF PROCESS

**Plymouth County Sheriff's Office**      22 Cottage Street, Brockton MA  02301   Telephone (508) 580-2110
**Plymouth, SS**

8/14/2020

I hereby certify and return that on 8/14/2020 at 10:00 AM I served a true and attested copy of the Summons, First Amended Complaint and Jury Demand in this action in the following manner: To wit, by delivering in hand to Charlie Seeling, Town Administrator, agent, person in charge at the time of service for The Town of Halifax Board of Selectmen at 499 Plymouth Street Halifax, MA 02338 Attest ($5.00) Basic Service Fee ($30.00) Postage and Handling ($3.00) Total: $38.00

**Deputy Sheriff David Coache (Office)**

David Coache

**Deputy Sheriff**

Date:

| **Summons** | CIVIL DOCKET NO.<br>2083 CV 00401 | **Trial Court of Massachusetts**<br>**The Superior Court** |
|---|---|---|

| CASE NAME:<br><br>Gordon C.. Andrews<br>Plaintiff(s)<br><br>vs.<br><br>The· Town of Halifax, et al<br><br>Defendant(s) | Robert S. Creedon, Jr.    Clerk of Courts<br><br>Plymouth    County<br><br>COURT NAME & ADDRESS:<br><br>Plymouth Superior Court<br><br>72 Belmont Street<br><br>Brockton, MA 02301 |
|---|---|

FILED
COMMONWEALTH OF MASSACHUSETTS
SUPERIOR COURT DEPT. OF THE TRIAL COURT
PLYMOUTH COUNTY

THIS SUMMONS IS DIRECTED TO    **The Town of Halifax Planning Board**    AUG (Defendant's name)

*Clerk of Court*

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the    Plymouth Superior    Court.

**YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1. **You must respond to this lawsuit in writing within 20 days.**

If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

2. **How to Respond.**

To respond to this lawsuit, you must file a written to response with the court **and** mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:

   a) Filing your **signed original** response with the Clerk's Office for Civil Business, Plymouth Superior   Court
   52 Obery Street, #2041, Plymouth, MA 02360 (address), by mail or in person **AND**

   b) Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following address:
   Ginny Kremer, ESQ.
   Blatman, Bobrowski & Haverty, LLC
   9 Damonmill Square, Suite 4A4
   Concord, MA 01742

3. **What to Include in Your Response.**

An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your court no more than 10 days after sending your Answer.

A TRUE COPY ATTEST

Clerk of Courts

3 (cont). You can also respond to a Complaint by filing a **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12**. If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at:

www.mass.gov/courts/case-legal-res/rules_of_court

### 4. Legal Assistance.

You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

### 5. Required Information on All Filings:

The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Judith Fabricant _____ , Chief Justice on _____ , 20____ . (Seal)

Clerk-Magistrate _____

Note: The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

---

## PROOF OF SERVICE OF PROCESS



**Plymouth County Sheriff's Office**      22 Cottage Street, Brockton MA  02301   Telephone (508) 580-2110
**Plymouth, SS**

8/14/2020

I hereby certify and return that on 8/14/2020 at 10:00 AM I served a true and attested copy of the Summons, First Amended Complaint and Jury Demand in this action in the following manner: To wit, by delivering in hand to Charles Seeling, Town Administrator, agent, person in charge at the time of service for The Town of Halifax Planning Board at Town Clerk's Office 499 Plymouth Street Halifax, MA 02338 Attest ($5.00) Basic Service Fee ($30.00) Postage and Handling ($3.00) Total: $38.00

**Deputy Sheriff David Coache (Office)**

**Deputy Sheriff**

Date:

| **Summons** | SUMMONS DOCKET NO. | **Trial Court of Massachusetts** |
|---|---|---|
| | 2083 CV 00401 | **The Superior Court** |

| CASE NAME: | | Robert S. Creedon, Jr. | Clerk of Courts |
|---|---|---|---|
| | | Plymouth | County |

Gordon C. Andrews                    Plaintiff(s)

vs.

COURT NAME & ADDRESS:

Plymouth Superior Court

72 Belmont Street

The Town of Halifax, et al          Defendant(s)

Brockton, MA 02301

**FILED**
COMMONWEALTH OF MASSACHUSETTS
SUPERIOR COURT DEPT. OF THE TRIAL COURT
PLYMOUTH COUNTY

THIS SUMMONS IS DIRECTED TO     Charles Seelig

**SEP 1 0 2020**
(Defendant's name)

Clerk of Court.

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the     Plymouth Superior     Court.

**YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1. **You must respond to this lawsuit in writing within 20 days.**

If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

2. **How to Respond.**

To respond to this lawsuit, you must file a written to response with the court **and** mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:

a) Filing your **signed original** response with the Clerk's Office for Civil Business, Plymouth Superior     Court 52 Obery Street, #2041, Plymouth, MA 02360 (address), by mail or in person **AND**

b) Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following address:

Ginny Kremer, ESQ.          Blatman, Bobrowski & Haverty, LLC
                             9 Damonmill Square, Suite 4A4
                             Concord, MA 01742

3. **What to Include in Your Response.**

An "Answer" is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your court no more than 10 days after sending your Answer.

A TRUE COPY ATTEST

Clerk of Courts

3 (cont). You can also respond to a Complaint by filing a **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12**. If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at:

www.mass.gov/courts/case-legal-res/rules_of_court

## 4. Legal Assistance.

You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.

## 5. Required Information on All Filings:

The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. __Judith Fabricant__ , Chief Justice on _____ , 20____ . (Seal)

Clerk-Magistrate _~~Robert Crowley Jr.~~_

Note: The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

---

## PROOF OF SERVICE OF PROCESS

I hereby certify that on __8/18/20__ . I served a copy of this summons, together with a copy of the complaint in this action, on the defendant named in this summons, in the following manner (See Mass. R. Civ. P. 4(d)(1-5)):

_in – hand personally_

Dated: __8/18/20__                      Signature __Ch Senz__

**N.B.   TO PROCESS SERVER:**

PLEASE ENTER THE DATE THAT YOU MADE SERVICE ON THE DEFENDANT IN THIS BOX - BOTH ON THE ORIGINAL SUMMONS AND ON THE COPY OF THE SUMMONS SERVED ON THE DEFENDANT.

Date: __8/18/20__

rev. 1/2019